## THE STATE v. STOCKWELL, *Appellant*.

### DIVISION TWO.

1. **Criminal Law:** MURDER : MANSLAUGHTER : ACCIDENTAL KILLING. The evidence in this case *held* to authorize instructions on murder in the first and manslaughter in the second and fourth degrees, and on accidental killing.

2. **Criminal Practice:** INSTRUCTIONS : HARMLESS ERROR. A judgment will not be reversed because of error in giving instructions on grades of homicide not authorized by the evidence, where the conviction was not on such grades.

*Appeal from St. Francois Circuit Court.*—HON. J. D. Fox, Judge.

AFFIRMED.

*Jasper N. Burks, M. L. Clardy* and *T. B. Crews* for appellant.

(1) The killing was clearly accidental, and the instruction on, and conviction of, manslaughter cannot be supported. This is not a case where the shooting, though unintentional, resulted from negligence in handling a firearm, such as to indicate carelessness or recklessness incompatible with a proper regard for human life. *State v. Emory*, 78 Mo. 77. Nor does it come within the construction of the statute relating to manslaughter in the fourth degree, given by the court in *State v. Edwards*, 70 Mo. 480; *State v. Dunn*, 80 Mo. 681. (2) The court erred in overruling defendant's motion for a new trial.

*John M. Wood*, Attorney General, for the State.

(1) As the defendant was not convicted under the instructions relative to murder in the first and second

degrees and manslaughter in the second degree, it will not be necessary to consider those instructions. ( 2 ) The sixth instruction correctly submits the question of manslaughter in the fourth degree, and is not open to objection. R. S. 1879, sec. 1249 ; *State v. Thomas*, 78 Mo. 338 ; *State v. Gee*, 85 Mo. 647. ( 3 ) The eighth instruction is correct. *State v. Talbott*, 73 Mo. 347 ; *State v. Gee, supra*. ( 4 ) The ninth is the usual instruction in regard to the credibility of the witnesses. *State v. Thomas, State v. Talbott, State v. Gee, supra*. ( 5 ) The eleventh, in regard to the punishment, was correct. R. S. 1879, sec. 1251.

THOMAS, J.—Defendant was jointly indicted with his father, Thomas Stockwell, in the circuit court of St. Francois county in February, 1887, for the killing of Juda Bess. Upon a trial had, Thomas Stockwell was acquitted, but the defendant was convicted of manslaughter of the fourth degree, and sentenced to imprisonment in the penitentiary for a term of two years.

The difficulty out of which this prosecution grew occurred on the sixteenth of November, 1886, in St. Francois county. At the time, Robert Stockwell, the appellant, lived on a farm in said county, the legal title to which was in his wife. Thomas Stockwell, the father of Robert, made his home with him. Jonathan Bess and family occupied a part of the same premises, living in a house distant about a quarter of a mile from the Stockwell residence. They were there by virtue of some claim which was not recognized by Stockwell, and they paid no rent.

On the morning of November 16, Robert Stockwell and his hired man were cutting firewood near where Bess lived. After they had been there awhile, Bess and his son Daniel went into the timber and commenced cutting. As soon as Robert Stockwell saw them he went home. (He is very deaf, and he said his purpose in going home was to get his father to go with him and talk to Bess and warn him from cutting the timber.)

He and his father soon returned and went to where Bess and his son Daniel were chopping. Almost immediately thereafter, Thomas Stockwell attacked Jonathan Bess, and the two engaged in a hand-to-hand conflict. Daniel Bess states that about the same time Robert Stockwell struck him with a stick and knocked him down, but Robert denies it, and it is admitted by Daniel that he made no complaint to anyone of being hurt. During the *melee*, Jonathan Bess told Daniel to go to the house and get his gun. It was about sixty yards to the house. Daniel went for the gun—it was a double-barrel shotgun—and in a few minutes returned with it in his hands, accompanied by his sister, Juda Bess. All this time Thomas Stockwell and Jonathan Bess were keeping up a sort of desultory warfare, old man Stockwell getting the worst of it, and, when Daniel returned, Jonathan Bess had just knocked Thomas Stockwell down again, and was kicking him. As Daniel got over the fence, near where Robert Stockwell was standing, he cocked the gun and continued on towards Robert, his sister Juda walking in front of him. As they approached Robert, the latter rushed past the girl and sprung at Daniel, and seized the gun. Then there was a struggle for its possession. While the two were contending the girl attempted to assist her brother and struck or pushed Stockwell. Just at that time, or a moment afterwards, the gun was discharged, and the load of shot took effect in the girl's [thigh cutting the femoral artery, and thus inflicting a wound from which she died the same day.

Daniel Bess testified that defendant, Robert Stockwell, twisted the gun out of his hands "threw the muzzle of the gun back up hill and shot Juda. When he shot her, he said: 'By God, I have killed one and I will be God-damned if I don't kill another.'" Defendant testified in regard to the homicide as follows: "I grabbed the gun with my left hand and threw the muzzle in the air; I grabbed it with my right hand and

wrenched it away from him.   I did not shoot the gun, nor attempt to shoot it, or use it in any way.''

The court instructed the jury in regard to murder of the first and second degrees, and manslaughter of the second and fourth degrees.   The technical terms used in the indictment were properly defined.   The court also properly defined that heat of passion which reduces murder of the first to murder of the second degree as well as that heat of passion which reduces a homicide to manslaughter.

The defendant contends that the court erred in giving the following instruction:   "If you believe, and find from the evidence in this cause, that Juda Bess struck, or assaulted, the defendant, Robert Stockwell, and, while under the influence of violent passions aroused by the act and conduct of Juda Bess, he fatally shot and killed Juda Bess with a shotgun, but not in a cruel or unusual manner, without malice, as defined in these instructions, whether with, or without, an intent to kill, and he did this under such circumstances as does not constitute excusable homicide, and that Thomas Stockwell was then and there present, and abetting, counseling, encouraging or assisting the defendant, Robert Stockwell, in the commission of such offense, you will find defendants guilty of manslaughter in the fourth degree."

Defendant says "this instruction in view of the evidence is manifestly erroneous.   The killing was clearly accidental; deplorable of course, but involuntary and accidental."   We think the evidence not only warranted, but required, the court to instruct the jury in regard to an accidental killing, and, if the court had gone no further than to give the instruction under review, error would have been committed; but the court did not stop here.   The jury was further instructed as follows:   "The court instructs the jury that if they shall believe from the evidence in the cause that Juda Bess was shot

and killed with a shotgun, and shall further find from the evidence that said gun was fired by Daniel Bess, or while in his hands, at Robert Stockwell with the intent of shooting said Robert Stockwell, and that said Robert Stockwell knocked the gun off and away from his body, and in so doing placed said gun in such position that the shot, when fired, took effect upon, and killed, said Juda Bess, or if the jury shall find from the evidence that the said Daniel Bess came upon the scene of the difficulty with a loaded shotgun in his hands, and held the same in a threatening attitude, and that the defendant, Robert Stockwell, attempted to wrest said gun from his hands, and in a scuffle for such purpose said gun was accidentally discharged and shot and killed Juda Bess, then in either event the killing was excusable homicide on the part of said Robert Stockwell, and the jury must acquit him.''

The two instructions quoted presented to the jury very clearly the theories of the defendant as well as the prosecution. The definition of manslaughter of the fourth degree, as given by the court, is correct. *State v. Thomas*, 78 Mo. 328; *State v. Gee*, 85 Mo. 647.

And the definition of an excusable homicide, as applied to the facts of this case, was certainly as favorable to defendant as he could ask. The jury must have found that the killing was not accidental, and the evidence justified such a finding.

II. The defendant insists that there was no evidence upon which to base instructions for murder of the first and second degrees, and manslaughter of the second degree. We do not concur in this view of the evidence, but, even if the contention be right, this would not authorize the reversal of the judgment for the simple reason that defendant was not convicted of either one of those grades of homicide.

Finding no error of law or fact in this record, the judgment of the trial court is affirmed. All of this division concur.