# THE STATE v. HENRY YATES, Appellant.

### Division Two, December 3, 1923.

1. **APPEAL: Failure to Perfect: No Motion to Dismiss.** A sugges-
   tion by the Attorney-General in his brief alone that the appeal
   in the criminal case be dismissed because of defendant's failure
   to perfect his appeal within twelve months after it was granted,
   does not satisfy the statute (Sec. 4107, R. S. 1919), which makes
   no provision for dismissal except upon motion of the Attorney-
   General;  and in the absence of such motion, it is unnecessary to
   consider the proof of good cause for failure to perfect the appeal
   within twelve months.

2. ————: **Authentication of Bill of Exceptions.** The contention that
   "the bill of exceptions is not authenticated or identified" drops
   out of the case where defendant, upon leave of this court, supplies
   the record of the trial court showing the signing, sealing and
   filing of the bill of exceptions and the order making it a part of
   the record in the case.

3. **DIRECTED VERDICT: Substantial Evidence.** There being sub-
   stantial evidence on the part of the State from which the jury
   may find that defendant shot and killed deceased, without reason-
   able excuse or provocation, while he was engaged in a commend-
   able effort to keep others from fighting in defendant's house, the
   trial court should not direct the jury to return a verdict of ac-
   quittal.

4. **MURDER: Protection of Home: Selling Whiskey: Self-Defense.**
Where defendant was not attempting to eject deceased from his
home for the reason that he was creating a disturbance or violating
the law, but according to his own testimony, to protect himself or
some one else from physical injury or death at the hands of de-
ceased, the refusal to permit defendant to prove that, on defend-
ant's premises, deceased poured whiskey from a jug and gave it
to members of his party, and that deceased was selling whiskey on
defendant's premises, is not reversible error, since defendant
had no right to shoot deceased for selling whiskey, but such testi-
mony should be admitted for such bearing as it may have on his
defense of self-defense.

5. ———: **Instructions: Correct Abstract Law: Detached Evidence:
Unavailing as Defense.** Instructions telling the jury that the
mere fact that the defendant may have ordered deceased or any of
his companions to leave his premises; that the mere fact that de-
ceased's brother or any of his companions may have been in-
toxicated and may have used vulgar and indecent language in the
presence of defendant or his guests at the dance; and that the
mere fact that defendant may have killed deceased in his own
home did not justify the killing of deceased, or mitigate the of-
fense, and that no words, however opprobrious or insulting, can
justify the killing of the party using them, while correct as ab-
stract propositions of law, are erroneous and the giving of them
reversible error, where the defense is self-defense, in that they
single out certain detached facts and in effect tell the jury that
such facts have no bearing upon the question of self-defense.

6. ———: ———: **Self-Defense: All Pertinent Facts.** Where the de-
fendant claims that his shooting of defendant was done in the
defense of himself and his guests, he is entitled to have the jury
consider all facts which may have any bearing, however slight,
upon the question of self-defense, and the jury cannot be limited
by the instructions to a consideration of the occurrences imme-
diately attending the shooting.

7. ———: **Instruction for First Degree: Convicted of Second Degree.**
A defendant convicted of murder in the second degree cannot
complain of the giving of an instruction on murder in the first
degree. But substantial evidence offered by the State tending to
show that the shooting was entirely unjustified; that deceased
was offering no assault upon defendant or any one else, but was
engaged in an effort to quiet a disturbance in defendant's house
and to prevent a fight between his guests; that nothing was done
to provoke defendant or to arouse his passion, but that he had

State v. Yates.

ample time to deliberate, authorizes an instruction on murder in the first degree.

8. ———: ———: Malice: Drinking Whiskey: Question for Jury. Evidence tending to show that deceased and his companions were intoxicated and using improper language, that defendant was complaining that they were selling whiskey at the dance in his house, that they were unwelcome guests and had returned after being requested to leave, is properly for the consideration of the jury on the question of malice, but does not preclude an instruction on murder in the first degree, deceased being shot, according to the State's testimony, as he was attempting to quiet a disturbance between his companions in defendant's house, and defendant having ample time for deliberation upon his murderous act.

9. ———: Instruction: Intentional Killing: Omission of Self-Defense. An instruction telling the jury that "if you find and believe from the evidence that the defendant intentionally killed deceased by shooting him in the head with a pistol, and that such pistol was then and there a deadly weapon, then the law presumes such killing was murder in the second degree, in the absence of evidence to the contrary," does not authorize a verdict, is not an attempt to cover the whole case, and the omission of any reference to defendant's defense of self-defense did not render it erroneous, but the words "in the absence of evidence to the contrary" left the jury free to consider evidence of self-defense.

10. ———: ———: Assuming Fact. An instruction which assumes as a fact that deceased was striking another at the time defendant shot him should be refused.

11. ———: ———: Shooting Without Intention to Kill. If defendant intentionally fired a pistol in a room occupied by other persons and not in self-defense, and shot and killed one of them, even though he had no intention of killing any one, he is not entitled to an acquittal, but his act constituted manslaughter at the least; and an instruction telling the jury that if defendant was shooting at the uplifted hand of deceased for the purpose of preventing injury to himself and others and that the shot accidentally hit deceased in the head, they should acquit him, was properly refused, there being no evidence that defendant shot at some other person in self-defense and accidentally struck deceased.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing*, Judge.

REVERSED AND REMANDED.

*P. S. Terry* for appellant.

(1) "The owner of a home or place of business need not retreat if assaulted therein, but may, after the refusal of the trespasser to leave upon request, employ such force, short of inflicting death, as may be necessary to remove him from the building; and if death results from a blow given under such provocation, the killing may be reduced to manslaughter." State v. Reed, 154 Mo. 122. (2) "Every man has a right to defend his premises from intrusion, as well as his person from attack; and for that purpose to employ such force as may reasonably appear to him to be necessary, and if in the use of such force, fatal consequences unexpectedly ensue to the intruding or attacking party, he is not answerable for them. And the defendant may protect his home from unlawful acts (including among said unlawful acts, profane peace-disturbances) to the extent, if necessary, of even taking life." Morgan v. Durfee, 69 Mo. 469; State v. Pollard, 139 Mo. 220; State v. Raper, 141 Mo. 327; State v. Reed, 154 Mo. 122. (3) "The court shall not on the trial of the issues in any criminal case sum up or comment on the evidence or charge the jury as to matter of fact, unless requested to do so by the prosecuting attorney and the defendant or his counsel." Sec. 4038, R. S. 1919. "It is unfair to the defendant to specifically call the attention of the jury to any particular part of the evidence, but the jury should be allowed to weigh all evidence which is admitted and not stricken out by the court; and with aid of the argument to form their own conclusions of what it proves or tends to prove." State v. Rogers, 253 Mo. 413; State v. Edelen, 288 Mo. 160; State v. Adkins, 284 Mo. 687; State v. Schaffer, 253 Mo. 337; State v. Rutherford, 152 Mo. 133; State v. Grugin, 147 Mo. 56.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for respondent.

(1)   Appeal in felony cases must be perfected within twelve months.   The appeal herein was granted on January 27, 1922; the bill of exceptions was not filed with the circuit clerk until May 23, 1923, and in this court on June 4, 1923, a period of one year, four months and seven days after granting appeal.   This appeal should therefore be dismissed.   Sec. 4107, R. S. 1919; State v. Moulton, 262 Mo. 137.   (2)   The bill of exceptions is not authenticated or identified; therefore there can be nothing before this court for review but the record proper.   State v. Howard, 225 Mo. 624.   (3)   Appellant complains of the court's refusal to give his Instruction 3, which told the jury that Yates had the same right to defend Hunt from assaults of deceased as to defend himself from assaults by deceased.   This proffered instruction is bad because it does not conform to the evidence. According to appellant's testimony deceased was not assaulting Hunt but the appellant at the time he shot deceased.   The principle embodied therein being unapplicable to the facts it was properly refused.   State v. Starr, 244 Mo. 183; State v. Stockton, 61 Mo. 382; State v. Montgomery, 230 Mo. 675.   (4)   Appellant complains of Instructions 6, 7, 10 and 11 on the ground that they are comments on the evidence.   Evidence being offered in defense to a charge of homicide which is legally insufficient for that purpose, an instruction to that effect is a declaration of law, and not an invasion of the province of the jury to determine the facts.   21 Cyc. 1033; State v. Gartrell, 171 Mo. 516; State v. Ballance, 207 Mo. 618; State v. Bostick, 245 Mo. 487.   (a)   Where the effect of evidence is a conclusion of law it is the duty of the court to so instruct.   State v. Seal, 47 Mo. 607-8.   (b) Similar instructions have been long approved by this court.   State v. Hudspeth, 159 Mo. 208; State v. Griffin, 87 Mo. 613; State v. Rider, 95 Mo. 484; State v. Painter, 67 Mo. 87; State v. Kaiser, 78 Mo. App. 577; State v. Gamble, 119 Mo. 431.   (c)   Where the law fixes the weight or effect of evidence there is no impropriety of the court declaring it to the jury.   Choquette

v. Barada, 28 Mo. 499.   (d)  There is a distinction between singling out a particular fact and a comment on the evidence which establishes that fact.   In the trial of a cause, the State or defendant may offer testimony upon any particular fact, and it is not a comment on the testimony to specially refer to that fact; but it would be otherwise if the court should undertake to refer specially to items of evidence as to its weight and credibility in support of the fact itself.   The test is:  Do they single out particular facts or items of evidence and comment thereon, or tell the jury whether they are entitled to little or great weight?  We think they do not. State v. Pyscher, 179 Mo. 158; State v. Galliton, 176 Mo. App. 123; State v. Elmore, 195 Mo. App. 20.

DAVID E. BLAIR, P. J.—Defendant was convicted of murder in the second degree and sentenced upon the verdict to imprisonment in the State Penitentiary for a term of fifteen years.   From this judgment he has appealed.

The Attorney-General suggests in his brief that the appeal in this case should be dismissed because defendant failed to perfect his appeal within twelve months after such appeal was granted.   Section 4107, Revised Statutes 1919, provides that the appeal shall be dismissed under such circumstances, if the Attorney-General files a motion to dismiss it, unless defendant shall show good cause for his failure to perfect his appeal.

The Attorney-General has not filed a formal motion to dismiss the appeal, and has merely called the situation to our attention in his brief.   The statute makes no provision for such dismissal, except upon motion of the Attorney-General, and we think the mere suggestion of such dismissal in his brief does not satisfy the conditions of the statute.   It is unnecessary to consider the proof of good cause for failure to perfect the appeal within twelve months, now tendered by defendant, since the Attorney-General has not seen fit to file the statutory motion.   The Attorney-General is not required to file such motion, but *may* do so.   Since he has not filed the motion and the ap-

peal has now been fully perfected, the question of dismissal of the appeal under Section 4107 is not before us.

The Attorney-General also contends in his brief that there is nothing before this court for review, except the record proper, because "the bill of exceptions is not authenticated or identified." This point is now out of the case, for the reason that under our leave heretofore given, defendant has supplied in this court the record of the trial court showing the signing, sealing and filing of the bill of exceptions in the trial court and the order of that court making such bill of exceptions a part of the record in the case.

The evidence offered by the State tends to prove that defendant shot and killed one Truman E. Williams at defendant's home near Crystal City in Jefferson County, on October 23, 1921. A dance was in progress at defendant's home at the time. Deceased, his brother, John Williams, and four other men, including one Schleuter and one Aubuchon, arrived at the dance sometime about nine o'clock. Schleuter, Aubuchon and John Williams were intoxicated. The evidence is conflicting whether or not deceased had been drinking, but is apparently in agreement that he was not intoxicated. Schleuter at least was very much under the influence of liquor.

There is testimony that Schleuter, Aubuchon and John Williams paid the required admission to the dance. Deceased did not pay such admission fee, and did not dance and apparently did not even remove his overcoat during the evening. There is some evidence tending to show that deceased and his friends were not invited by defendant to attend the dance. In any event, their presence was accepted upon their arrival.

It appears that Schleuter and one John Hunt had trouble on the dance floor, and Hunt either assaulted Schleuter or put him out of defendant's house. Thereupon defendant asked deceased and his friends to leave, and to come back some time when they were sober and not selling whiskey, and they would then be welcome.

At about one o'clock, or shortly after, deceased and his brother John returned with Aubuchon and probably Schleuter. The evidence of John Williams and Aubuchon is so indefinite and vague concerning transactions thereafter as to lend ready credence to the contention that they were drunk at the time. Their recollections were evidently befuddled for some reason. It is reasonably clear from the State's evidence that, after the party returned to the defendant's home after midnight, John Williams went into the house and quarreled with John Hunt over his treatment of Schleuter earlier in the evening, and blows were struck. Deceased came into the room and endeavored to separate his brother and Hunt and to get them to go outside if they wished to fight. While he was doing this defendant fired three shots. The bullet from the first one struck deceased about the left temple and penetrated his skull, and came out about an inch and a half above and one-half inch to the rear of his right ear. The left side of his face was powder-burned. He at once became unconscious and fell to the floor and died in an automobile while being taken to the doctor's office. John Williams was struck by another shot and severely wounded, but recovered and testified at the trial.

Several witnesses testified that they saw defendant fire the fatal shot, and that he said he had killed deceased. There was testimony that defendant told some of those present to take the deceased out before he shot the others and that there were two others he wanted to get.

The testimony of defendant was to the effect that, while John Williams and Hunt were fighting, deceased came in, pushed defendant out of the doorway and rushed past the defendant cursing him and shaking his fist in his face and shoved defendant against a dresser. The dresser drawer flew open and defendant seized a revolver just as deceased had his hand up in the air with a revolver in it, and defendant fired one shot at his hands to keep deceased from shooting him or others there present; that deceased fired at the same time that defendant fired. The testimony of Aubuchon was that defendant reached in his bosom

and drew something therefrom, inferentially a revolver. Defendant's wife testified that she overheard deceased and Aubuchon planning to break up the dance. This conversation occurred just before the shooting.

The people present at the time were evidently very much excited and confused by the events which were transpiring. The only lamp in the room was extinguished in some manner, probably by the concussion of the shot, and the only light coming into the room after that shown through the door leading into the adjoining room. Some of the witnesses testified to hearing two shots, and some of them four, but the most of them heard three shots. There is testimony on the one hand that defendant took three discharged shells from his revolver after the shooting, and on the other hand that he took out only one exploded shell.

There is testimony tending to corroborate defendant that another shot was fired practically simultaneously with his own shot, and that the flashes of these shots were in opposite directions. We think the great preponderance of the testimony tends to show that all the shots came from the same point, and that they made sounds like they were all from the same revolver. Evidence was introduced by the defendant to the effect that a bullet was afterwards removed from the window casing or sash six and one-half or seven feet above the floor and in the course in which defendant claimed he fired at deceased's upraised hand.

The evidence fully warranted the finding of the jury that a shot fired by defendant caused the death of deceased. If defendant's shot caused the death of deceased, the fact that the bullet entered his head at the left temple and emerged above his right ear disproves defendant's claim that deceased was facing him and about to shoot him at the time he fired. Deceased must then have been facing a point very nearly at a right angle to a line from the one to the other. There was testimony given by other witnesses which tended to show that deceased had something shiny in his hand and that he fired a shot, but this

appears to be in conflict with the great weight of the testimony.

No weapon of any sort was found upon deceased's person or upon the floor. The killing occurred in defendant's home and among his friends and it is fair to assume that, if deceased had dropped a pistol or other weapon, it would have been found on the floor and produced by defendant or his friends. It does not appear likely that deceased could have put a weapon in his pocket, after he shot, to be afterwards removed and suppressed by his friends while taking him to the doctor. He was rendered instantly unconscious. Such is the usual and expected result of a bullet fired through the brain. The trial court refused to admit testimony that deceased and his party were selling whiskey. However, the fact was gotten before the jury that defendant was complaining of the presence of deceased and his friends on that ground and because of their intoxication.

I. In his motion for a new trial defendant complained of error of the trial court in refusing to direct a verdict for defendant. Except for an assignment covering refused instructions generally, defendant does not complain of such action in his assignment of errors made in this court. That the action of the court in this respect was proper, is clearly evident from the facts shown by the State. From that testimony, the jury was authorized to find that defendant shot and killed deceased, without reasonable excuse or provocation, while he was engaged in a commendable effort to keep Hunt and John Williams from fighting in the house and to get them to go outside. There was not only substantial evidence of this, but we think the great weight of the testimony is to that effect. The assignment is overruled.

**Directed Verdict.**

II. The first assignment of error made in the brief in this court is that defendant was not permitted to prove that, on defendant's own premises, deceased poured

whiskey from a jug into bottles and gave it to members

<span>Selling<br>Whiskey.</span> of his party. The second assignment relates to the court's refusal to permit defendant to show deceased was selling whiskey on defendant's premises. Defendant offered testimony tending to show such facts and the court excluded it. The two assignments may be considered together.

It cannot be disputed that defendant had the right to exclude from his home anyone creating a disturbance or violating the law therein. But defendant was not attempting to eject the deceased for such reason. While deceased and his friends may originally have been uninvited and unwelcome guests, the defendant seems to have accepted the situation and permitted them to come in and to remain. The only inference to be drawn from all of the testimony of defendant is that he fired the fatal shot (if he fired it) to protect himself or someone else in his house from physical injury or death at the hands of deceased. There is no suggestion that he was trying to eject deceased at the time of the shooting. Defendant had no right to shoot deceased because he had been selling whiskey. Defendant does not even claim that he shot him for any such reason. However, as the case must be retried for reasons hereinafter stated, we think the above testimony should be admitted for such bearing as it may have on the defense of self-defense.

III. Defendant assigns error in the giving of the following instructions:

"6. The court further instructs the jury that the mere fact that the defendant may have told or ordered

<span>Erroneous<br>Instructions.</span> the deceased or any of his companions to leave the defendant's premises on the night of the alleged offense, will not justify the defendant in killing or shooting at the deceased, if you find that he did kill or shoot at him.

"7. The court further instructs the jury that the mere fact that the deceased's brother or any of his companions may have been intoxicated and may have used

vulgar or indecent language in defendant's presence or in the presence of his guests at the dance on the night of the alleged homicide will not excuse, justify or mitigate the offense, if you find that defendant did kill the deceased.

"10. The court further instructs the jury that the mere fact that the defendant may have killed the deceased in his (defendant's) own home, if you find that he did kill him, will not excuse, justify or mitigate the offense.

"11. The court further instructs the jury that no words or epithets, however opprobrious or insulting, can justify the killing of the party who uses them."

One of the criticisms leveled against such instructions is: "They should not have been given for another and further reason, that they are comments on the evidence; they cut up the rights of the defendant to defend himself, his home, his family and his friends and take from him in piecemeal and parcels all, or at least a good part, of such rights; they are unfair comments on the evidence and are against the principle of the law as declared in Section 4038, Revised Statutes 1919, in that they unfairly and specifically call the attention of the jury to particular parts of the evidence and they do not permit the jury to weigh all evidence which is admitted and not stricken out by the court; and do not permit the jury to form their own decisions as to what such evidence proves or tends to prove."

These instructions are correct as abstract propositions of law, but, under the authority of our previous decisions, they should not have been given in this case and the action of the trial court in giving them to the jury constitutes reversible error. This point in the case at bar comes squarely within the rule laid down and ably considered in State v. Adkins, 284 Mo. 687. We quote from the opinion of RAILEY, C., as follows:

"Instruction numbered ten complained of by appellant, reads as follows:

" 'Although you may believe from the evidence that the deceased bit the fingers of defendant in the altercation or combat testified to between the defendant and the deceased at or near the north end of the bridge, yet such biting of the fingers of the defendant did not give the defendant a right subsequently to assault deceased with a loaded shot-gun or to shoot him.'

"Section 5244, Revised Statutes 1909, provides, that: 'The court shall not, on the trial of the issue in any criminal case, sum up or comment upon the evidence.'

"Defendant claimed before the jury, that he shot deceased in self-defense. In passing upon his conduct at that time, it was the province of the jury alone to determine from the evidence whether appellant had reasonable cause, from what had formerly occurred and what took place at the time of the shooting, for believing that deceased would do him bodily harm, unless he defended himself by shooting, as he did. The fight at the north end of the bridge was one of deceased's own choosing, in which he was the aggressor, and during which he had bitten defendant's fingers. It was a question for the jury, and not the court, as to whether defendant shot deceased thereafter through revenge, on account of the latter's act in biting his fingers, or whether, in good faith, defendant had good reason for believing, when he shot deceased, that the latter would inflict injury on him, if not checked, as he had done in the former affray, when he bit defendant's fingers. The instruction, as given, practically eliminated this feature of defendant's defense. The jury, in considering the merits of the controversy, should have been left free to consider all that had occurred between the deceased and defendant as shown by the evidence. Under the statute above quoted, the court had no legal right to single out that part of the affray at the north side of the bridge, relating to the biting of defendant's fingers, and to tell the jury the legal effect of such an isolated portion of the evidence, instead of leaving the jury to consider this question with all the other matters relied upon as a defense in the cause. We

are of the opinion that the above instruction was not only prejudicial to defendant's rights, but that the giving of same was in contravention of the statute, supra, and the decisions of this court in construing same. [State v. Fish, 195 S. W. l. c. 998; State v. Dixon, 190 S. W. l. c. 294; State v. Malloch, 269 Mo. l. c. 239; State v. Rogers, 253 Mo. l. c. 412; State v. Shaffer, 253 Mo. l. c. 337; State v. Raftery, 252 Mo. l. c. 80; State v. Mitchell, 229 Mo. l. c. 697; State v. Rutherford, 152 Mo. 124, 133; State v. Reed, 137 Mo. l. c. 139; State v. McCanon, 51 Mo. 160.]

"In our opinion, the foregoing authorities leave no room for cavil or doubt, as to the illegality of said instruction ten. According to our conception of the law, if this instruction is sustained, the court, with the same propriety, could have instructed the jury that deceased's quarrelsome character did not afford any ground for defendant shooting him. It could likewise have instructed that the threats of deceased, when leaving the scene of combat at the north end of the bridge where he had bitten defendant's fingers, to the effect that he would get defendant before night, did not, within itself, authorize defendant to shoot deceased.

"In other words, we hold that the trial court was not justified in selecting detached portions of what occurred between defendant and deceased at the north end of the bridge, but should have left the jury to weigh all the evidence in the case, including the biting of defendant's fingers, in determining whether appellant shot deceased through revenge, or to avoid additional injuries at his hands."

It cannot be doubted that defendant had no right to shoot deceased merely because he did not leave defendant's premises and remain away after being requested to do so or because he was intoxicated (if he was intoxicated) or used objectionable language or opprobrious and insulting epithets or because defendant was in his own home at the time. But defendant claimed the shooting was done in the defense of himself and his guests and, in coming to a conclusion upon such defense, the defend-

ant was entitled to have the jury consider all facts which might have any bearing, however slight, upon such question. The jury could not properly be limited to the occurrences immediately attending the shooting when the defense was self-defense. The condition, acts and attitude of deceased before the shooting were properly to be considered in explaining his acts and conduct at the time of the shooting and the likelihood of his inflicting death or serious personal injury upon defendant or his guests and the reasonableness of defendant's apprehension of danger at the hands of deceased. The criticised instruction told the jury that certain things constituted no defense. While the defendant had no right to kill the defendant because of such acts and conduct, yet the evidence of such acts and conduct may have had an important bearing when the jury came to consider the question of self-defense. In this case, as in the Adkins Case and the cases therein cited, we think the giving of said instructions was seriously prejudicial to the defense of the defendant.

IV. Defendant contends that the trial court erred in giving an instruction on murder in the first degree. He cites no authorities to the proposition and does not discuss the question in his brief and argument. Since defendant was convicted of murder in the second degree, he cannot complain of the giving of an instruction upon murder in the first degree. [State v. Morehead, 271 Mo. 84; State v. Wilson, 250 Mo. 323; State v. Sharp, 233 Mo. 269, 288; State v. Stockwell, 106 Mo. 36; State v. Grote, 109 Mo. 345; State v. Baugh, 217 S. W. (Mo.) l. c. 280; State v. Porter, 207 S. W. (Mo.) 774.]

*Instruction: Murder in First Degree.*

For the purposes of this appeal we are not required to consider the propriety of an instruction on murder in the first degree. But, as the case must be retried, a brief consideration of the point is proper. We think the instruction was properly given under the evidence and the record before us. There was substantial and abundant

evidence offered by the State tending to show that the shooting of deceased was entirely unjustified. From such evidence it appears that deceased was offering no assault upon defendant, Hunt or anyone else at the time of the shooting, but was simply engaged in the commendable effort of trying to quiet the disturbance in defendant's house and to prevent a physical encounter therein between Hunt and his brother; that he was pushing them apart at the time and requesting them not to fight in the house, but to go outside, if they insisted upon fighting.

The evidence tending to show that deceased and his party were intoxicated and using improper language and were unwelcome guests and that defendant was complaining because they were selling whiskey at his home and that they had returned after being requested to leave, was properly for consideration by the jury upon the question of malice. The evidence offered by the State tends to show nothing which was calculated to provoke the defendant or to arouse his passion. There was ample time to deliberate upon his act. The jury might have concluded that he fired the fatal shot in revenge for the previous acts and conduct of deceased and his friends and simply seized the interference of deceased in the quarrel of other persons as an excuse to wreak such malice. The State had the right to have that view presented to the jury, and an instruction on first degree murder was therefore properly given.

In the early case of State v. Dunn, 18 Mo. 419, SCOTT, J., said: "If the party killing had time to think, and did intend to kill, for a minute as well as an hour or a day, it is a deliberate, wilful and premeditated killing, constituting murder in the first degree. So that, under the statute, there is no foundation for the notion that the crime must have been preconceived some time before its perpetration."

The rule there laid down has been consistently followed and is still the law in this State. [State v. Starr, 38 Mo. l. c. 276; State v. Holme, 54 Mo. l. c. 162; State

v. Speyer, 207 Mo. l. c. 552; State v. Liolios, 285 Mo. l. c. 19.]

V. Instruction five given by the trial court was as follows:

"The court further instructs the jury that if you find and believe from the evidence that the defendant intentionally killed Truman E. Williams by shooting him in the head with a pistol, and that such pistol was then and there a deadly weapon, then the law presumes that such killing was murder in the second degree, in the absence of evidence to the contrary."

*Omission of Defense.*

The criticism leveled against this instruction is that it leaves out of consideration the right of defendant to protect himself, his home and his friends. We do not think the instruction is subject to such criticism. It is not an instruction authorizing a verdict, and the court was not required to cover the whole case therein. Evidence of killing in defense of self, home or friends comes within the clause "in the absence of evidence to the contrary." As a correct proposition of law the instruction is unassailable. [State v. Snow, 293 Mo. 143; State v. Kyles, 247 Mo. 640; State v. Minor, 193 Mo. 597; State v. Young, 119 Mo. 495.]

VI. Instruction three offered by defendant was properly refused. If defendant reasonably believed deceased was about to kill Hunt or to do him some great bodily harm and had reasonable grounds for so thinking and shot to prevent such act, he, of course, had the right to defend him. This situation was covered in given instruction fourteen. Instruction three was properly refused because it assumed deceased was making an assault upon Hunt.

*Assuming Fact.*

VII. Instruction four was properly refused. If defendant intentionally fired a revolver in a room oc-

cupied by other persons and not in self-defense and shot and killed one of such persons, he would not have been entitled to an acquittal, even though he had no intention of hitting anyone. His act would at least have constituted manslaughter. There is no contention under the evidence that defendant shot at some other person in self-defense and accidentally struck deceased. All that defendant contended was that he shot at deceased's hands to prevent him from shooting himself or someone else.

*No Intention to Kill.*

VIII. For the errors committed in giving Instructions six, seven, ten and eleven, as heretofore pointed out, the judgment is reversed and the cause remanded for retrial. All concur; *Walker, J.,* in the result.