**STATE of Missouri, Respondent,**

v.

**James DAVIS, Appellant.**

**No. 57571.**

Supreme Court of Missouri, Division No. 2.

March 12, 1973.

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

Michael M. Flavin, Clayton, for appellant.

HOUSER, Commissioner.

James Davis, charged with second degree murder, convicted by a jury of manslaughter and sentenced to 7 years' imprisonment, appealed to this Court prior to January 1, 1972.

On the night of September 21, 1969 Mary Naylor was killed by a gunshot wound while standing on the south side of Delmar Boulevard with a male escort named Pettis. The two had emerged from a nearby tavern. Before they left the tavern Pettis and defendant exchanged words, following a physical contact between the two (Pettis having bumped into defendant, who was standing beside a table). Defendant accused Pettis of trying to knock him down. Profanity was used. Pettis invited defendant to come outside the tavern and "told [defendant] what he would do to him." When Pettis and Mary Naylor left the tavern they were followed by defendant. Five minutes later, while Naylor and Pettis were standing on the sidewalk on the south side of the street, partially facing east, defendant was observed walking across the street, headed south, coming from the northeast, carrying a rifle. Several people were "out there." People were coming out of the bar, which had just closed. The area was well lighted with a new mercury-vapor lamp. Defendant was carrying the rifle in a position "down toward the sidewalk." When defendant reached a point on the street 6 or 7 feet distant from Naylor and Pettis, defendant fired two or three shots "to the ground"—into the sidewalk in a southwest direction, holding the rifle in his two hands at arm's length without putting it up to his shoulder. Some man grabbed defendant and pushed him "up the street." As a result of the two or three shots fired by defendant Mary Naylor fell backward on the sidewalk and lay there face up until placed on a stretcher and taken to a hospital. Pettis

received a bullet wound in the leg. Markings were observed on the sidewalk 2, 3 or 4 feet from where Mary Naylor and Pettis had been standing. Several spent shell casings which were fired from a .30 calibre semiautomatic military rifle were found at the scene. One spent pellet and a live round of ammunition were found on the north side of the 40-foot wide street. A spent shell casing was found next to the body, within a few feet of the body; two more spent shell casings were found in the street about 10 feet north of the south curb, and another was found 8½ feet south of the north curb. No weapon was found at the scene. Mary Naylor was pronounced dead upon arrival at the hospital. Post-mortem examination revealed a gunshot entrance wound just below the right breast which traversed both lungs, the heart, the pulmonary artery and exited from the body at the apex and posteriorly in the left shoulder. The report stated that the cause of death was a gunshot wound of the heart.

There was sufficient substantial evidence to justify submission of the case to the jury and to sustain a conviction of manslaughter. From the evidence the jury could properly infer that appellant intentionally fired the shots and that his motive was to shoot, frighten or intimidate Pettis. In the slight altercation which preceded this shooting words were passed between appellant and Pettis, who made a statement to appellant which contained the veiled threat of bodily harm. This confrontation, however, occurred while the parties were inside the tavern, at least five minutes previously, and had terminated before they left the tavern. At the time of the shooting, which occurred outside the tavern and in front of the building next door, Pettis was not menacing appellant, advancing upon him or threatening him but was peaceably standing on the sidewalk with Mary Naylor, attending to his own business. No claim is made that appellant shot to defend himself against an attack by Pettis. The shooting could not be justified on the ground of self-defense. Appellant did not testify at the trial but at the time allocution was granted he volunteered the following, which casts light on his motive: "I didn't intentionally kill no one. I didn't have that intention in mind. I thought what I did, *what I thought was to protect myself.*" (Our emphasis.) If appellant, thus motivated, intentionally fired the shots, not in lawful self-defense, and in so doing killed Mary Naylor, he was guilty at least of manslaughter, notwithstanding he shot without malice or premeditation as to her and had no intention of inflicting death upon her. State v. Yates, 301 Mo. 255, 256 S.W. 809, 814 [11] (1923).

■ Appellant claims that the State failed to prove the time sequence between the firing of the gun and the time Mary Naylor fell to the ground, but there was sufficient circumstantial evidence that she was struck and fell as a result of the shots fired by appellant. There was no necessity of proving the time lapse between firing and falling.

■ Appellant claims that the State failed to show that Mary Naylor could have been struck by one of the shots fired by appellant; that there was evidence that the gun was aimed away from deceased. We find no such evidence. Witness Jackson did answer negatively to a question whether in his estimation appellant was shooting in the *general direction* of where Pettis and Mary Naylor were standing and he was not able to state "at which point" the shot was aimed. The jury could logically harmonize that testimony by Jackson, however, with his testimony that the shots were fired into the sidewalk in a southwest direction 2, 3 or 4 feet from Mary Naylor and Pettis and that the two were in a position southwest of appellant as he crossed the street. Considering this evidence, and the marks which were observed on the sidewalk, there is substantial direct and circumstantial evidence that the shots were fired so close to the victim and in such a

direction as to ricochet off the sidewalk and into the body of Mary Naylor.

Appellant claims that the State failed to prove the cause of death, but the Coroner's physician's report showing the cause of death, which was introduced in evidence, was sufficient to prove this fact.

Appellant's claim that no chain of custody was established to insure that the body on which the autopsy was conducted was the body of the same person shot on Delmar Boulevard is without merit. The body of Mary Naylor was taken to the hospital and from the hospital to the morgue. The death occurred at approximately 2 a. m. on September 21, 1969, and the report of the post-mortem examination, made by the Coroner's physician, shows that it was conducted on the same morning at 11:00 a. m. on the body of one Mary Naylor.

Appellant's second point is that he was inadequately represented and was thereby deprived of due process of law. The record in this case "does not sufficiently develop facts essential to a meaningful review" of this question, State v. Cluck, 451 S.W.2d 103, 107 (Mo.1970), and therefore review of this allegation is declined until such time as an evidentiary hearing may have been accorded on that issue under Rule 27.26, V.A.M.R. State v. Phillips, 460 S.W.2d 567, and authorities cited 1. c. 569 (Mo.1970).

Appellant's third point is that the court erred in giving Instruction No. 3, since it was ambiguous and confusing as to punishment. It omitted the word "both," thus varying from the language of § 559.-140, which includes the word. This slight variance is de minimis. The sense of the instruction was not destroyed or blurred by the omission. No. 3 contains the conjunction "and." No intelligent juror would fail to apprehend from reading Instruction No. 3 that the jury had the option to assess a fine of not less than $100 and in addition thereto a jail sentence of not less than three months.

Appellant's fourth point is that the court erred in failing to give a circumstantial evidence instruction. Appellant did not offer an instruction embodying this principle. The trial court's failure to give such an instruction was not error, "there being no offer of such an instruction by appellant." State v. Barnes, 442 S.W.2d 932, 934 [2], and authorities cited (Mo. 1969). Furthermore, the giving of an instruction on circumstantial evidence is not mandatory where, as here, part of the evidence is direct. State v. Stevens, 467 S. W.2d 10, 25 [23] (Mo.1971), cert. den. 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546.

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.