THE STATE v. GEORGE KOWERTZ, Appellant.—25 S. W. (2d) 113.

Division Two, February 19, 1930.

750

*Stratton Shartel*, Attorney-General, and *A. B. Lovan*, Assistant Attorney-General, for respondent.

BLAIR, P. J.—In the Circuit Court of Bates County, George Kowertz was convicted of first degree robbery by means of a dangerous and deadly weapon, for which the jury assessed his punishment at imprisonment in the penitentiary for twenty years. Under the

provisions of Laws of 1927, page 173, the trial court thereupon increased his punishment by imposing imprisonment for two years in addition to that assessed by the jury. From the judgment thus rendered, an appeal was granted to this court. Appellant has not furnished us with a brief.

The State's evidence tended to prove the following facts:

The Ballard Banking Company, a banking corporation of Ballard, in Bates County, was entered by appellant and a companion shortly before closing time on November 22, 1928. By means of the fear engendered by their display of revolvers or pistols, these men took from said bank and from Jacob Kedigh and Ray Winegarden, cashier and assistant cashier, respectively, in custody of said bank, about a thousand dollars in money. The robbers then tied the bank officials together and departed in a Hudson automobile, carrying the stolen money in a handbag.

Within about an hour afterwards and near Drexel in the same county and about thirty miles west and north of Ballard, Dr. Fletcher had stopped his automobile by the roadside and was seated therein. He had his shotgun with him and was looking over the surface of a lake or pond near the roadside to see if any ducks were on the water. Two men in a Hudson automobile, driving from the direction of Ballard and answering the general description of the men who robbed the Ballard bank, drove up behind him. They immediately got out and approached Dr. Fletcher's automobile and, by a display of deadly weapons, compelled him to drive them in his automobile toward Kansas City. After proceeding a mile or so, Dr. Fletcher saw that an automobile containing several men would meet his automobile approximately at the ford of a muddy creek or branch and suddenly ditched or mired his automobile so as to make it impossible for either automobile to proceed. After inflicting certain bodily injuries on Dr. Fletcher by way of retaliation or punishment, the two men got out of his automobile, taking the handbag, their own weapons and Dr. Fletcher's shotgun. After threatening the occupants of the second automobile, these men commandeered said automobile and drove the same toward Kansas City and escaped.

One week later appellant and one Seeton were arrested while they were in bed together in a rooming house in Kansas City. Appellant was identified at the trial by Kedigh and Winegarden as one of the men who entered the bank and robbed it. Dr. Fletcher identified him as one of the men who seized him and his automobile and attempted to compel him to drive them to Kansas City. Dr. Fletcher also identified a shotgun produced at the trial as the shotgun taken from him by these men. The barrel had been sawed off since it was taken from him. It was not shown that appellant was in possession

of the gun at the time of his arrest or at any time other than when it was taken from Dr. Fletcher's automobile.

Testifying in his own behalf, appellant said that he was a graduate physician. He denied participation in the robbery of the bank at Ballard, and said he was in Kansas City on the day it occurred. It appeared from the testimony of appellant's wife that he had served a term in the Federal prison at Leavenworth, Kansas. The nature of his offense was not shown.

By a Mrs. Murray, the keeper of the rooming house in Kansas City, and her negro maid and other witnesses, it was shown that appellant was at said rooming house, or elsewhere in Kansas City during the entire day of November 22nd. If the jury had believed appellant's alibi evidence, it would necessarily have found him not guilty. Appellant also offered testimony which tended to show that Cashier Kedigh was unable to identify appellant when he first saw him after his arrest in Kansas City.

It is manifest from the foregoing brief sketch of the facts developed in evidence that there was sufficient evidence to authorize the jury to find that appellant was one of the men who held up Kedigh and Winegarden and robbed the bank at Ballard, Missouri, November 22, 1928.

It is contended that the venue of the crime was not properly shown. Kedigh said that the robbery was committed in Ballard, in Bates County. Other testimony tended to show that the crime was committed in Missouri. It was shown that the bank robbed was in Ballard, Missouri. There was, therefore, substantial evidence tending to show that the crime was committed in Bates County, Missouri.

It is also contended that it was not shown that the revolvers used by the robbers were loaded, as charged in the indictment, and hence that no case was made authorizing punishment under Section 3310, Laws of 1927, page 174, for robbery by means of a dangerous and deadly weapon. The statute authorizes greater punishment where the first-degree robbery is committed "by means of a dangerous and deadly weapon." The use in the indictment of the words "loaded with gunpowder and leaden balls" was clearly surplusage and, of course, it was unnecessary to prove such loading, if the mere proof that the robbery was committed by means of a revolver or automatic pistol be regarded as sufficient proof that the robbery was committed "by means of a dangerous and deadly weapon."

The meaning of those words in the 1927 Act has not been passed upon by this court. However, we have construed other statutes where those words have been used and have held that, where the weapon mentioned in the charge was shown to be a pistol or re-

volver or similar weapon, it was unnecessary to prove in addition that such weapon was loaded in order to constitute it a dangerous and deadly weapon within the meaning of the statute. In construing these words as used in the concealed weapon statute (Sec. 3275, R. S. 1919), FARIS, J., said:

"To hold that it is incumbent upon the State to prove affirmatively that a pistol which is carried concealed, or carried when the accused is intoxicated, or which is exhibited in a rude, angry, and threatening manner, is loaded, as a condition precedent to a conviction, would be practically to render the statute unenforceable. This is not only the view which this court has already taken (State v. Morris, 263 Mo. l. c. 351, 172 S. W. 603), but it is the view held in all other jurisdictions wherein the language of the statute denouncing this offense is similar to ours (Fielding v. State, 135 Ala. 56, 33 So. 677; Redus v. State, 82 Ala. (2 So.) 713; State v. Tapit, 52 W. Va. 473, 44 S. E. 231; State v. Bollis, 73 Miss. 57, 19 So. 99; State v. Wardlaw, 43 Ark. 73; Commonwealth v. Murphy, 166 Mass. 171, 44 N. E. 138, 32 L. R. A. 606; Williams v. State, 61 Ga. 417, 34 Am. Rep. 102; State v. Duzan, 6 Blackf. (Ind.) 31)." [State v. Riles, 274 Mo. 618, 204 S. W. 1; See, also State v. Baumann, 311 Mo. 443, 278 S. W. 974.]

To require the State to prove that the instrumentalities used by the robbers in accomplishing a robbery, such as revolvers, automatic pistols, shotguns, rifles, etc., which ordinarily are so used only when loaded and capable of dealing out injury and death, are in fact what they purport to be from the very nature of the use made of them by the robbers, would defeat the object and purpose of such statutes as Section 3310, Laws of 1927, page 174, because it is quite unusual to apprehend the robbers in the act and before they have had an opportunity to carry away with them from the scene of the crime the weapons used by them to effect its perpetration.

The proof of the dangerous and deadly character of the weapon used by appellant and his companion was sufficient in this case. In the absence of countervailing testimony on the point, the jury was authorized to find that the revolvers or automatic pistols used in the robbery were what the robbers intended their victims to believe they were, to-wit, dangerous and deadly weapons, and that their lives would be imperiled if they resisted the robbers who were armed therewith. By this we do not mean to say that an issue of fact upon the dangerous and deadly character of the weapon used could not be raised by the evidence. But we do intend to hold that where nothing appears beyond the fact that a weapon is used in a robbery, in the manner dangerous and deadly weapons are ordinarily used to accomplish a robbery, the jury has the right, from such use alone,

to draw the inference that the weapon so used was in fact a dangerous and deadly weapon.

There was no basis in the record for a finding by the jury that the robbery was committed by the use of a weapon or weapons which were not dangerous and deadly, and hence no error was committed by the trial court in failing to instruct the jury that, if it did not find that the robbery was committed by means of a dangerous and deadly weapon, it should fix appellant's punishment at imprisonment in the state penitentiary for a term of not less than five years.

The motion for new trial assigns error because the court overruled appellant's motion to quash the indictment on the alleged ground that it did not state facts sufficient to constitute robbery in the first degree. The assignment is without merit. It is unnecessary to set out the indictment. It follows the language of Section 3307, Revised Statutes 1919, defining robbery in the first degree and is in the form frequently approved by this court, with the additional allegation that the robbery was accomplished by means of a dangerous and deadly weapon, so as to make applicable the punishment of death or imprisonment in the penitentiary for not less than ten years provided for by Section 3310, Laws of 1927, page 174.

We find no merit in appellant's complaint concerning the conduct of the Assistant Attorney-General, Mr. Lovan, in stating in his examination of prospective jurors that, when a man comes into a bank and pushes a gun into the side of the cashier and demands money, "the law says he must be hung; *and I am saying to you that he ought to be hung.*" The words in italics are those said to be prejudicial to appellant because they inflamed the minds of the jury against him. The words referred to constituted nothing more than a statement of counsel's approval of the action of the Legislature in making such an offense a capital one and did not amount to a declaration on his part that he thought appellant was guilty and should be hanged. In fact, counsel immediately withdrew the remark and apologized to the court and jury and disclaimed any such meaning for the words used. Counsel was finally permitted to ask the panel if any juror would permit himself to be prejudiced by such remark in determining the guilt or innocence of appellant under the charge whereof he was being tried. The ensuing lack of response on the part of the jury indicated as effectively as it could be proven that no such prejudice existed. Under the showing made, the assignment of error must be overruled.

In his motion for new trial, appellant made some general assignments of error concerning the admission and exclusion of testimony which are not sufficiently specific and definite to comply with Section 4079, Laws of 1925, page 198. However, specific complaint is made of the action of the court in permitting the State to show that two men, one of whom was identified as appellant, held up Dr. Fletcher, compelled him to drive them toward Kansas City and took away his shotgun. Appellant is seeking to bring this testimony within the general rule that proof of separate and distinct crimes is inadmissible.

This evidence was properly admitted. In People v. Molineux, 168 N. Y. 264, 61 N. E. 286, it was said: "Generally speaking, evidence of other crimes is competent to prove the specific crime when it tends to establish; (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial." This rule has been frequently quoted with approval by this court. [See State v. Spray, 174 Mo. l. c. 582, 74 S. W. 846; State v. Bailey, 190 Mo. l. c. 280, 88 S. W. 733; State v. Buxton, 324 Mo. 78.]

The proof as to the Fletcher robbery was proper. The testimony showed that the two men who robbed the Ballard Bank were of a certain size, age and appearance. They took the money from the bank in a handbag and rode away in a Hudson automobile. Two men of similar description, riding in a Hudson automobile and carrying a similar handbag and at a time, the distance considered, which agreed with the time of the bank robbery, held up and robbed Dr. Fletcher and exhibited a desire to get out of the country which would not be denied. The proof of the second robbery was entirely proper on the question of the identity of appellant as one of the bank robbers. The same considerations dispose of the complaint that counsel for the State improperly referred to the Fletcher robbery in argument and in the opening statement to the jury. It was legitimate proof and he had the right to base argument on it.

The evidence concerning the arrest of appellant a week after the robbery, in company with a young man whose description corresponded to that of the younger of the two men who robbed the Ballard bank, is said to have been erroneously admitted. We do not think so. It was a circumstance which the jury had the right to consider in determining the identity of appellant. It was shown on cross-examination of appellant's witnesses that appellant and the young man had been

roommates for some time prior to the date the bank was robbed and that they came and went together daily.

Error is assigned because the trial court permitted the State to exhibit to the jury the shotgun taken from Dr. Fletcher. We fail to find in the bill of exceptions where any objection of that sort was made during the trial. Hence, the assignment is not here for consideration.

Complaint is also made because the court refused to discharge the jury on account of the conduct of the Assistant Attorney-General, Mr. Lovan, in saying in the hearing of the jury that he would refrain from further cross-examination of the appellant in accordance with the wishes of appellant's counsel. The incident appeals to us as too trivial and unimportant to merit serious consideration. We have examined the record in connection with the incident and are satisfied that the rights of appellant were not prejudiced by the remark. The jury probably did not even notice the remark or would not have noticed it, had not its attention been called to it by the objection of counsel.

Complaint is made of the refusal of appellant's instruction numbered 8 on alibi. The subject was properly covered by given Instruction 4, which is not subject to the criticism made of it, that it did not advise the jury that all appellant was required to do was to raise in the minds of the jury a reasonable doubt concerning his presence at the time when and the place where the robbery was committed.

The court properly covered the subject of reasonable doubt in an instruction it gave to the jury and no error was committed in refusing to give Instruction 7 on that subject offered by appellant.

Assignment of error No. 19 in the motion for new trial, that the court erred in failing to instruct on all the law of the case, has so frequently been ruled to be insufficient that citation of authorities is unnecessary.

Complaint is made because the Assistant Attorney-General was permitted to make the closing argument. Section 4025, Revised Statutes 1919, provides that "unless the case be submitted without argument, the counsel for the prosecution shall make the opening argument, the counsel for the defendant shall follow, and the counsel for the prosecution shall conclude the argument." The words "counsel for the prosecution" are used in the statute in providing for the order of argument, while the words "prosecuting attorney" are used in the same section in declaring who "must state the case" to the jury before the evidence is offered. The contrast in the wording indicates that the Legislature did not intend to require the closing argument to be made by the prosecuting attorney. An assistant attorney-general, as here,

758

or even counsel privately employed to assist the prosecuting attorney, is certainly "counsel for the prosecution" within the meaning of Section 4025. Since the statute did not provide that the prosecuting attorney should close the argument, it was clearly within the discretion of the trial court to determine the order in which counsel should argue the case.

It has even been held that it is not error for the trial court to permit a special prosecutor to state the case to the jury, notwithstanding said section provides that "the prosecuting attorney must state the case." [State v. Stark, 72 Mo. l. c. 38; State v. Taylor, 98 Mo. l. c. 243, 11 S. W. 570.]

An hour on each side was fixed by the trial court for the argument to the jury. The prosecuting attorney used ten minutes in opening the argument and the Assistant Attorney-General was permitted to use fifty minutes for the closing argument for the State. Appellant complains of this. Section 4025 does not specify how the time devoted to the arguments on behalf of the State in opening and closing shall be apportioned and, in the absence of any statutory requirement on the subject, the matter was clearly within the sound discretion of the trial court. The statute does not provide that the counsel for the defendant shall *reply* to the argument of counsel for the prosecution, who makes the opening argument. It merely provides that defendant's counsel "shall follow." It does not appear that the trial court abused its discretion in supervising the time and manner of the argument in this case and the assignment is overruled.

Complaint is made of the following argument by Mr. Lovan: "I am saying to you that there will go from one end of the country to the other a word of praise if you bring in a verdict and say this man ought to be hung." The fact that the jury failed to fix appellant's punishment at death or at imprisonment for an excessive term shows very clearly that it was not seeking the words of praise promised in the fervid argument of counsel above quoted and that it was not unduly influenced thereby. If every breach of the strict proprieties in arguing a case to the jury should result in a reversal of the judgment upon appeal, our penitentiary and our jails would be occupied by few defendants, except those who plead guilty or fail to appeal after conviction. We are satisfied that appellant suffered no prejudice by the argument complained of and hence overrule the assignment.

The verdict is said to be the result of passion and prejudice on the part of the jury. Of this there is not the slightest proof in the record. The punishment assessed indicates nothing of the sort, but rather denotes moderation on the part of the jury. Of the guilt of appellant there was an abundance of credible testimony to support the verdict.

We have carefully considered the entire record in the light of the assignments of error made in the motion for new trial and, finding no reversible error therein, we conclude that appellant was fairly and impartially tried and that the judgment should be affirmed. Let our order go accordingly. *White, J.,* concurs; *Walker, J.,* absent.