THE STATE v. MAX MATTHEWS, Appellant.—111 S. W. (2d) 62.

Division Two, December 17, 1937.

*Breuer & Northern, W. I. Mayfield, J. Andy Zenge, Jr.,* and *Phil M. Donnelly* for appellant.

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney-General, for respondent.

WESTHUES, C.—Appellant was charged with murder in the first degree. Upon a trial he was found guilty of manslaughter and sentenced to imprisonment in the penitentiary for a term of five years. He appealed.

The case originated in Laclede County, where there was a mistrial due to a disagreement on the part of the jury. A change of venue brought the case to Phelps County, where appellant was convicted. Appellant was alleged to have fatally stabbed one Bert Tracy, on the evening of November 24, 1934. Appellant and deceased had lived on adjoining farms near Lynchburg, Laclede County, Missouri. Evidence was introduced to support the following statement of facts: Appellant and deceased had not spoken to each other in a friendly manner for about five or six years. During this time deceased had made threats against appellant. A number of these were made in person. For example, appellant testified that on one occasion deceased threatened to strike him with a sledge hammer; that on

another occasion rocks were the instruments of attack; at another time a gun was displayed in a threatening manner, and that on the afternoon preceding the fatal stabbing deceased threatened to assault him with a car crank, but deceased's wife interfered and prevented the assault. There was also evidence of a number of threats made by appellant against deceased. The last of these was alleged to have been made a few hours before the stabbing, when appellant sharpened his knife and said he was going to use it on deceased. It may be stated that the evidence justifies the assertion that appellant and deceased had, as the boys say, "chips on their shoulders," ready and willing to fight at the first opportunity. Idle gossip was the occasion for the difficulty between the men on the afternoon of the killing, as well as the altercation which sent Tracy to his grave. This gossip was first brought to the attention of appellant and his wife at that time. Deceased was alleged to have said that one Marion Williams had made disparaging remarks concerning appellant's wife, which reflected on her moral character. It was at that time that deceased was alleged to have threatened appellant with a car crank. Marion Williams visited the home of appellant that same evening. He was asked by the Matthews whether he had made the remarks related by Tracy during the afternoon. Williams denied that he had, and stated that he would straighten the matter that evening after the church meeting. Williams testified that it was at this time that appellant sharpened his knife and placed it in his pocket remarking that he would have it ready for use that evening. This was denied by appellant.

All the parties concerned attended the church services that evening. They were: Williams and his wife, deceased and his wife and also appellant and his wife. At the conclusion of the services Williams requested appellant's wife and also Tracy and his wife to go outside the church building so he could straighten the question of the gossip. When these parties met outside, Williams, according to his own statement, undertook the impossible task of peaceably settling a dispute over gossip, between people who had not been on friendly terms for years. This alleged peace party soon broke out in a verbal battle, during which the participants called each other bad names and used language which they had not learned at the church meeting. The evidence did not definitely disclose appellant's whereabouts at this time, but all parties agreed that he did not join in the affray until the deceased called appellant's wife a liar. At this point appellant took to the defense of his wife and called Tracy a liar. A physical combat followed immediately, between appellant and deceased, and resulted in deceased receiving stab wounds in the abdomen, from which he died ten days later.

At the trial the vital point of dispute was whether appellant or de-

ceased was the aggressor. Appellant's plea was self-defense. He introduced substantial evidence tending to prove that deceased advanced towards him with his hand raised; that deceased struck him over the head with a flashlight and continued striking him; that during this time he, appellant, cut the deceased with a knife to prevent further assault. The State introduced substantial evidence tending to prove that appellant was the aggressor; that he stabbed deceased before deceased struck him with a flashlight. The State also introduced evidence of statements made by appellant immediately after the altercation, which indicated that he was the aggressor. Appellant denied having made such statements and introduced evidence supporting his denial. It was shown by the defense that a number of the State's witnesses had, on previous occasions, that is, at the coroner's inquest and at the previous trial, given testimony much more favorable to appellant than that given at the trial in Phelps County. A number of witnesses testified that deceased's reputation as being a turbulent and quarrelsome man was bad.

Tracy died on the fourth day of December. On that day he made a statement concerning the manner in which he was cut by appellant. The statement was reduced to writing by the prosecuting attorney and signed by deceased. It was introduced by the State as a dying declaration.

Appellant has briefed five points upon which he seeks a new trial. It is alleged that the trial court erred in admitting the alleged dying declaration. It is asserted, by appellant in his brief, that this statement is beyond the scope of the rule concerning the subject matter of dying declarations. It reads as follows:

"My name is Bert E. Tracy and I live at Lynchburg, Missouri. On the 24th day of November, 1934, my wife and I and Arthur Williams and his wife all went to church at Lynchburg. We got there about six o'clock P. M. and were at the store until church began about seven thirty. After church was over Marion Williams came to me in the churchhouse and asked me to go outside with him. I went. Also Ollie Matthews, Marion Williams and my wife, Pearl Tracy, went outside. When I got out I said 'I know what you are outside here for to prove by Ollie that you never tried her.' I then noticed Max Matthews out there and when he heard Marion and I talking he said to Marion that he knew he was a liar. About that time Max Matthews stabbed me with a knife in the stomach. I hit him with a flashlight after he cut me the first time and tried to grab him. He then stabbed me in the leg and could not pull the knife out. He said while he was knifeing me that he had told me he was going to cut my guts out."

It is evident that the above statement contains only statements of facts and does not contain any conclusion as appellant

contends. To be admissible such statements should be restricted to the circumstances immediately attending the act and form a part of the *res gestae.* [State v. Clift, 285 S. W. 706, 1. c. 707 (4).] Upon a retrial the forepart of the statement, relating to matters which transpired before the parties left the church building, while not vital or material should not be admitted. The rule was concisely stated in State v. Peak, 292 Mo. 249, 237 S. W. 466, 1. c. 469 (3, 4):

"The rule here as elsewhere in regard to dying declarations is that they should be restricted to the identification of the accused, the act of killing *and the circumstances immediately attending the act, forming a part of the res gestae,* and to render them admissible, that they should be made in the presence of an impending realization of death and in the absence of a hope of recovery." (Italics ours.)

In State v. Kyle, 225 S. W. 1012, 1. c. 1017, and State v. Jamerson, 252 S. W. 682, 1. c. 686, 687, this court ruled that expressions of opinion and conclusions contained in an alleged dying declaration were not admissible. But the statement offered in evidence in the case now before us does not contain anything except statements of fact. As to this see also 30 Corpus Juris, 272. The point is, therefore, ruled against appellant.

■ Appellant also complains that the trial court permitted, over appellant's objection, special employed attorneys to conduct the case for the State. The bill of exceptions discloses that the prosecuting attorney of Laclede County, the prosecuting attorney of Phelps County, and three other attorneys, who were evidently employed by private individuals, appeared for the State. The attorneys employed to aid in the prosecution conducted the major portion of the case. The defendant was represented by three eminent, well qualified, practitioners of the bar. An average jury well understands that the prosecuting attorney represents the State in criminal cases and that if additional counsel appears for the State, who is not an official, private funds pay for such counsel. We are not prepared to state that that of itself creates any prejudice against the defendant. We have ruled upon this point and held that such practice does not constitute error. [State v. Kowertz, 324 Mo. 748, 25 S. W. (2d) 113, 1. c. 117 (11, 12) (13), and cases there cited.] Appellant cites Section 3681, Revised Statutes 1929 (Mo. Stat. Ann., p. 3227), and argues that this section provides that the *prosecuting attorney must* make the opening statement to the jury. Appellant also cites State v. Loeb, 190 S. W. 299 and State v. Richards, 334 Mo. 485, 67 S. W. (2d) 58, 1. c. 62, as so holding. In the Loeb and Richards cases this court was considering a question of procedure and did not pass upon the question of whether counsel employed by an individual could be permitted to make such an opening statement. We expressly held in State v. Arnett, 338 Mo. 907, 92 S. W. (2d) 897, 1. c. 900, 901, that

the section referred to prescribed a mode of procedure and that the term "prosecuting attorney" included any attorney lawfully assisting in the prosecution, citing State v. Stark, 72 Mo. 37; State v. Taylor, 98 Mo. 240, l. c. 243, 11 S. W. 570, and State v. Kowertz, supra. If parties interested in a prosecution feel that the prosecuting attorney, elected by the people, is unable to cope with the legal talent employed by the defendant, they ought in justice be permitted to employ additional counsel at their own expense. Lawyers, after all, are sworn officers of the court and while conducting a trial are under the direct control of the trial court. How, then, can the employment of counsel in a criminal prosecution be legally prejudicial to a defendant? We see no good reason for departing from our previous rulings.

Appellant contends that the court erred in giving Instruction No. 15. The instruction reads:

" 'The Court instructs the jury that if you find and believe that the defendant is guilty as defined in these instructions, then no words, epithets, slanders or charges against defendant's wife, however vile, revolting and insulting, will justify or excuse him.' "

We are of the opinion, in view of the facts in this case, that appellant's contention must be sustained. Appellant admitted that he cut the deceased, and pleaded self-defense as a justification or excuse. The jury was required to find, before acquitting appellant, that he had reasonable cause to believe, and did believe, that he was in danger at the hands of the deceased, and that he acted in self-defense. In determining this question the jury had the right to take into consideration all the facts and circumstances immediately surrounding the difficulty. There was evidence that deceased had made a number of threats against appellant; that ill-feeling existed between them; that only a few hours previous, deceased had threatened appellant with a car crank when appellant remarked that anyone who had made statements derogatory to his wife's character was a liar. The fact that deceased called appellant's wife a liar was certainly evidence from which reasonable men would draw the inference that deceased was highly excited and angry. This was legitimate evidence for the consideration of the jury. The instruction tended to inform the jury that what deceased said to appellant's wife should not be considered. In the State's brief we find the following assertion:

"All Instruction No. 15 told the jury, when read with the other instructions, was that if they concluded that the appellant did not kill in self-defense and, therefore, was guilty as defined in the foregoing instructions, then no words or charges against the defendant's wife would justify or excuse him."

The wording of the instruction does not justify such an interpretation. Would not a jury be more likely to interpret the instruction

thus: That if appellant cut the deceased then, "no words . . . will justify or excuse him." As an abstract proposition of law that may be correct. But the facts, if so, that deceased advanced towards appellant, or made previous threats, when standing alone, would not justify or excuse the assault. However, all the facts, when taken together, may have formed a sufficient foundation upon which to base a reasonable cause to believe that appellant was in danger, and thus justify the assault on the theory of self-defense. The facts, when standing alone, may not have been sufficient, but when taken together they may constitute a sufficient foundation for apprehension. Just as bricks, when properly connected, make a solid foundation, and like removing bricks weakens the foundation, so instruction fifteen weakened the foundation upon which the reasonable cause of apprehension was based. Many cases are cited in support of the instruction. An examination of those cases discloses that they hold mere words, no matter how provocative, do not justify an assault and do not reduce a killing from murder to manslaughter, unless they are accompanied with an actual battery. For a review of those cases see State v. Bongard, 330 Mo. 805, 51 S. W. (2d) 84. But, in the case before us we do not have the contention that mere words justified an assault, or that they would reduce the offense from murder to manslaughter. It was conceded in this case that the deceased struck appellant with a flashlight and inflicted a wound. The sharp issue was, who was the aggressor? The instruction tended to mislead the jury and to mitigate the evidence in support of appellant's plea of self-defense. We therefore hold that the instruction was erroneous. Our ruling is supported by the following cases: State v. Adkins, 284 Mo. 680, 225 S. W. 981, l. c. 982, 983(1); State v. Yates, 301 Mo. 255, 256 S. W. 809, l. c. 812, 813 (4). In the Yates case this court had a similar situation. Note what was said:

"It cannot be doubted that defendant had no right to shoot deceased merely because he did not leave defendant's premises and remain away after being requested to do so, or because he was intoxicated (if he was intoxicated), or used objectionable language or opprobrious and insulting epithets, or because defendant was in his own home at the time. But defendant claimed the shooting was done in the defense of himself and his guests, and, in coming to a conclusion upon such defense, the defendant was entitled to have the jury consider all facts which might have any bearing, however slight, upon such question."

For the error in giving Instruction No. 15, the judgment of the trial court is reversed and the cause remanded for another trial. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.