STATE of Missouri, Respondent,

v.

Charles GRATTEN, Jr., Appellant.

No. 50137.

Supreme Court of Missouri,

Division No. 2.

Feb. 10, 1964.

Jack J. Isgur, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, James W. Steele, Sp. Asst. Atty. Gen., St. Joseph, for respondent.

BARRETT, Commissioner.

Charles Gratten, Jr., better known to his numerous jailhouse witnesses (nine) as "Lawyer Gratten," has been found guilty of robbery in the first degree and sentenced to ten years' imprisonment.

Gratten did not testify; however, his partially supported defense was an alibi, that at the hour of the robbery on Cypress Street, 9:15 a. m., he was getting a haircut "and shot a little craps" in the poolhall at 12th and Garfield. Nevertheless, this in summary was the evidence adduced by the state: On January 7, 1963, Mr. and Mrs. Thompson were alone in their neighborhood grocery store at 1715 Cypress Street, Kansas City. Mr. Thompson was at the produce stand and Mrs. Thompson at the checkout counter when, about 9:15 a. m., Mr. Thompson turned around and there was a young girl with "a knife on me" and a man with "a gun on my wife." The knife "looked like a good-sized pocket knife" and the girl, eighteen inches to two feet away, had the knife pointed at Thompson's stomach and, he said, "I began to get afraid right quick. * * * I didn't want to get stuck with a knife, and, at the same time, I didn't want anything to happen to my wife." Mrs. Thompson said that she was counting money at the check-out counter when a man approached and said, "This is a stick up. * * * If you keep your mouth shut and do as I tell you, you will not get hurt." Neither she nor Mr. Thompson knew what kind of a gun the man had, whether it was an automatic pistol or a revolver, but, she said, "It was a one-barreled pistol, and it was a shiny gun" and "He had a gun on me, yes, sir."

The man took the money she was counting, $206, said, "Give me that" and at the same time ordered her to turn around and open the cash register from which he took $142 in bills. The man and the girl went out the front door, entered a 1955 Mercury convertible parked at the curb on 18th Street, backed down the hill to Edmond Street and drove away. Mr. Thompson called the police and gave them a description of the automobile and the robbers. The next two or three nights the Thompsons looked at a large number, several hundred, of police photographs of Negro men but were unable to identify any of them as their assailant. Then on February 12 the police came to the store with a photograph of Gratten and without hesitation both Mr. and Mrs. Thompson said, "That is him." Subsequently at a preliminary hearing and upon the trial the Thompsons positively identified the appellant as the robber.

In addition to the Thompsons, Jacqueline Harris, age 15, testified that as she left her boy friend's room at 2844 Tracy at one or two o'clock in the morning she, for the first time, met the defendant (known to her only as "Skillet") as he sat with a girl in his car parked at the curbing. And, she said, "He started talking to me about places to look at that he could hold up, and we rode around, looking at filling stations to see if anybody was guarding them" and finally the other girl "fingered" the grocery store, and Jacqueline and Gratten, in the manner described by the Thompsons, with knife and gun held them up, drove away, abandoned the automobile on Norton, and "we divided the money, and he said we was going to split up, so I called a cab."

These briefly narrated circumstances, needless to say, support the jury's finding of Gratten's guilt. State v. Kowertz, 324 Mo. 748, 25 S.W.2d 113. There was no direct proof that the gun was loaded. But, despite the allegation in the information and the hypothesis of instruction 2 of "a dangerous and deadly weapon, to wit; a pistol, loaded with gunpowder and leaden balls," there was no "countervailing testimony on the point, the jury was authorized to find that the revolver(s) or automatic pistol(s) used in the robbery were (was) what the robbers intended their victims to believe they (it) were (was), to wit, (a) dangerous and deadly weapon(s) and that their lives would be imperiled if they resisted the robbers who were armed there-

with." State v. Kowertz, 324 Mo. 1. c. 754, 25 S.W.2d 1. c. 115; State v. Martin, (Mo.) 346 S.W.2d 71, 72–73. In general, instruction 2 in hypothesizing robbery in the first degree is an adaptation of the language of the statutes (V.A.M.S. §§ 560.120, 560.135) and includes all the elements of the offense (State v. Politte, (Mo.) 249 S.W.2d 366) including the essential of "fear" which of course was a reasonable inference from the circumstances. State v. Ball, (Mo.) 339 S.W.2d 783, 91 A.L.R.2d 1042; State v. Parker, (Mo.) 324 S.W.2d 717; State v. Moore, (Mo.) 80 S.W.2d 128. The testimony of the Thompsons was sufficient to warrant and support the appellant's conviction and, therefore, he was not as a matter of fact found guilty upon the uncorroborated testimony of his accomplice, Jacqueline. State v. Brim, (Mo.) 339 S.W. 2d 775. Jacqueline's credibility as a witness was collateral to the main issue, there was no offer or request for a cautionary instruction as to her credibility and the court did not err in failing to specifically instruct the jury on this and related collateral subjects. State v. Mahan, (Mo.) 226 S.W.2d 593. Compare State v. Clark, 221 Mo.App. 893, 288 S.W. 77.

In connection with the witnesses and proof in general it is urged that the court erred in admitting in evidence "exhibit 1," Jacqueline's certified birth certificate. On cross-examination and otherwise the defendant sought to establish that Jacqueline was born in 1944 rather than in 1947 and, therefore, for the purposes of the criminal law, was subject to all the disabilities of majority and an accounting, as the appellant argues, "for lack of her prosecution" as an adult. But Jacqueline's majority or minority was likewise collateral to the main case and its essential problems. And while her certified birth certificate may not have been conclusive as to her paternity, it was nevertheless admissible and was prima facie evidence of the date of Jacqueline's birth and hence of her age. V.A.M.S. § 193.170; State v. Shelby, 333 Mo. 610, 62 S.W.2d 721; State v. Spinks, 344 Mo. 105, 125 S.W.2d 60.

Partially in this latter connection it is urged that the court abused its discretion in "admitting evidence in rebuttal which was improper, cumulative, prejudicial and a proper part of the state's case in chief." Jacqueline's mother was called in rebuttal and in connection with her testimony as to Jacqueline's age had the birth certificate. Aside from Jacqueline's mother—the other rebuttal witness was Detective King who testified that the "pickup (order) for Charles Gratten was issued at 9:15 a. m., January 16, 1963." The reason for this particular rebuttal testimony was that an attorney friend of Gratten's (corroborated by police officials connected with the incident) testified that on a certain date in January (prior to his arrest) Gratten and the attorney's handyman came to his office and said there was a rumor that the police were looking for him. They all went to police headquarters and inquired of the chief of detectives, with an offer "to turn him in," whether the police were looking for Gratten and, according to the attorney, "they didn't seem to have anything on him." It is not necessary to consider whether the rebuttal testimony, particularly that of Detective King, was relevant and properly admissible (People v. Castiel, 153 Cal.App.2d 653, 315 P.2d 79, 83), it is not manifest that it improperly infringed the appellant's right to a fair trial and even though cumulative if one witness, or collateral if the other rebuttal witness, there was no demonstrable abuse of discretion in the court's permitting it. State v. Dees, (Mo.) 276 S.W. 2d 201; State v. Smith, (Mo.) 261 S.W.2d 50.

Other matters assigned as error by appellant's industrious court-appointed counsel relate to the conduct of the prosecuting attorney in making certain "comments" in the course of the trial, his interrogation of certain defense witnesses on cross-examination and finally to portions of his argument to the jury. The "comment"

was a reference on voir dire to a police officer whose name had not been endorsed on the information. But, upon objection, the prosecutor said, "O. K. I will strike him off." There was no other or further reference to this particular officer and of course in this incident no obvious prejudice to the appellant's right to a fair trial. The "interrogation" came about in that Gratten called certain custodial officers and nine inmates of the county jail to prove that on the day of his preliminary hearing he had applied soot, lipstick, chewing gum and other contrived theatrical makeup and had in this manner made his complexion "much darker," had added a "false mole" or two, employed "some type of mouthpiece" and otherwise disguised his features until, as one witness said, "I didn't recognize him when I first looked at him." The inference, presumably, the appellant would have drawn from this testimony was that with this clever disguise the Thompsons could not possibly have identified him. Of course it was immediately established that these nine witnesses were then all "residents" of the county jail, and obviously were there for some reason, either serving sentences or awaiting trial on some criminal charge. And these particular witnesses had prior convictions of one kind or another, and while they were "competent witnesses," unfortunately for the appellant, their prior convictions "may be proved to affect (their) credibility." V.A.M.S. § 491.050; State v. Hood, (Mo.) 313 S.W.2d 661, 663–664.

 In part the prosecuting attorney's argument was a plea for law enforcement and the prevention of crime, and in part it was retaliatory and it does not plainly appear that the retaliatory phase of the argument was so manifestly inflammatory as to outweigh the right to reply. State v. Fuller, (Mo.) 302 S.W.2d 906; State v. Rhoden, (Mo.) 243 S.W.2d 75. In so far as the so-called "cumulative effect" of all these complaints is relied on it may only be said in conclusion that there was not present in this case the repeated inflammatory appeals to passion, or conduct manifestly prejudicial,

demanding the granting of a new trial irrespective of proper objections and the trial court's ruling as illustrated by State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524, and State v. Webb, 254 Mo. 414, 162 S.W. 622.

As indicated the briefed assignments of error are without merit and there is no error as to these matters upon the record before the court (Sup.Ct. Rule 28.02) and therefore the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.