**STATE of Missouri, Respondent,**

v.

**Robert Furen PAYNE, Appellant.**

**No. 54558.**

Supreme Court of Missouri,
Division No. 1.

April 13, 1970.

John C. Danforth, Atty. Gen., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for respondent.

Robert L. Brown, Arnold, for defendant-appellant.

WELBORN, Commissioner.

Appeal from sentence and judgment of 25 years' imprisonment, imposed under Second Offender Act, upon conviction at jury trial for robbery in the first degree with a deadly weapon.

At around 11:00 P.M. on September 7, 1968, Frank Rowe, Lynn Collom, Arthur Gerdel and William Fischer were returning

from a meeting at Blackwell. They were in an automobile driven by Rowe and were traveling on supplementary highways in Jefferson County when they noticed a yellow Plymouth with a black top at the intersection of Route V and Highway 67. Rowe passed the Plymouth, but the Plymouth passed Rowe's auto again. After Rowe had gone a short distance, the Plymouth again appeared in front of his auto, blocking the road so that Rowe had to stop.

One of the two occupants of the Plymouth, identified by the persons in the Rowe car as appellant, Robert Payne, got out of the Plymouth, approached Rowe and said, "I want beer." When Rowe replied that they had no beer, Payne said, "I want money." Rowe told him that there was very little of that in the car, and Payne said, "I'll get my shotgun and blow your brains out." With that Payne reached into the Plymouth and brought out a shotgun.

When Rowe saw the gun, he drove his auto through a ditch and onto the highway. The Plymouth followed. It struck Rowe's auto in the rear a couple of times as Rowe tried to keep ahead of the Plymouth. The driver of the Plymouth managed to get ahead of Rowe and stopped, blocking the roadway and forcing Rowe to stop.

Payne got out of the Plymouth with a shotgun and came alongside where Rowe was sitting. Payne said, "I want money." Rowe got out his wallet and handed Payne the money he had in it. Rowe was uncertain as to the amount. Payne also took a watch off Rowe's wrist. Payne placed the gun at the back of Rowe's neck and said, "I'm going to blow your Dago brains out." The gun fired and some pellets struck Rowe in the back of the head.

The other occupant of the Plymouth, Sonny Barton, had also gotten out of that vehicle. He approached Rowe's auto on the right-hand side and took $16 from Collom, seated in the right front seat. Five or six dollars were taken from Fischer and $38 and a watch from Gerdel.

After the shot had been fired, the men were ordered to get out of the car and to walk up the road. They walked to a house, where they called the sheriff.

A deputy sheriff found a yellow and black Plymouth some three miles from the scene of the crime. The Plymouth was stopped across a gravel road. No one was in it, but the deputy found a 12-gauge shotgun in the Plymouth. The Plymouth belonged to a former wife of Barton. The owner had left the shotgun in the car and it was there when she let Barton and Payne take the car at around 10:00 P.M. on the evening of September 7. According to the owner, Payne and Barton were drunk when they left in the car.

Payne was arrested the morning after the crime. The victims were called to the Jefferson County sheriff's office where they identified appellant and he was charged with the offense.

At the trial, the state offered the testimony of the four occupants of the Rowe auto, the owner of the Plymouth and various law enforcement officers, whose testimony showed the events above outlined. No evidence was offered on behalf of the defendant. The jury returned a verdict of guilty. Appellant's motion for a new trial was overruled and, after the trial court entered judgment imposing a 25-year sentence, this appeal followed.

 Appellant's first contention, that the evidence is insufficient to support the verdict, is without merit. The facts above recited show all of the elements of robbery in the first degree and appellant was identified as a principal in the offense. Evidence showed the taking of money and watches from the persons of the victims. The use of a deadly weapon pointed at Rowe provided the element of "violence to his person." Section 560.120, RSMo 1959, V.A. M.S.; State v. Neal, Mo.Sup., 416 S.W.2d 120, 123 [4]. The robbers acquired possession of the victims' property, showing the element of asportation which appellant

says is lacking. 77 C.J.S. Robbery § 3, pp. 450–451. The circumstances of the taking adequately establish the intention on the part of defendant to permanently deprive the owners of their property. State v. Rose, Mo.Sup., 325 S.W.2d 485, 488–489 [9, 10]. Appellant also argues that there was no evidence to show that the shotgun was a dangerous and deadly weapon and no evidence to show that it was in a working condition. No such evidence was necessary. However, the fact that the gun was discharged shows that it could be fired. The jury was authorized to conclude that the shotgun was in fact a dangerous and deadly weapon from the fact that it was so used. State v. Kowertz, 324 Mo. 748, 25 S.W.2d 113, 115 [2].

■ The recital of the facts which the state intended to prove in the prosecutor's opening statement adequately covered the essential elements of the offense charged. The objection that a verdict should have been directed for the defendant because the statement did not refer to any intention on the part of the defendant to permanently deprive the owners of their property is without merit. The circumstances stated adequately covered that element. State v. Rose, supra.

■ Appellant contends that the evidence to support the Second Offender Act application was inadequate because it failed to show discharge from the prior sentence. The evidence showed that appellant had been convicted in St. Charles County on July 16, 1953 of auto larceny, for which he was sentenced to five years' imprisonment; that he was imprisoned in the Missouri State Penitentiary on the conviction on July 17, 1953, and released from custody on August 31, 1956, by commutation by the governor. Appellant's contention that the evidence of commutation of sentence is not evidence of discharge is immaterial, as § 556.280, RSMo 1959, V.A.M.S., requires only that the defendant shall have been "placed on probation, paroled, fined or imprisoned" for the prior offense. Proof of

discharge from the prior sentence, required by the former Second Offender Act, § 556.280, RSMo 1949, repealed by the present act (Laws of Mo., 1959, S.B. No. 117) is no longer required. We note that, even under the prior act, proof of release under commutation by the governor was sufficient. State v. Wiggins, Mo.Sup., 360 S.W.2d 716, 718 [3].

■ The objection that the trial court permitted introduction into evidence of the records relied upon to support the Second Offender element after the prosecutor had stated to defense counsel that he had presented all of his evidence is unsupported by the record. The record shows that, after the Circuit Clerk of St. Charles County had testified and the prosecuting attorney had indicated that he had no further questions of that witness, defendant moved for a "summary judgment." The trial court properly observed at that time that the prosecutor had merely finished with one witness and there was no indication that the prosecutor intended to rely solely upon that witness's testimony.

A related question is presented in the complaint that the trial court erred in permitting the state to reopen its case and formally offer in evidence various items which had been marked as exhibits, identified by witnesses and previously exhibited to the jury. Those items included the shotgun used by defendant, the watch taken from Mr. Rowe, a shirt identified as the shirt worn by defendant at the time of the crime, a 12-gauge shotgun shell picked up by Mr. Rowe at the scene of the crime, Mr. Gerdel's watch and a set of keys found at the scene and identified as belonging to Barton.

After the state had announced that it closed the case, and before any request on the part of the defendant, the state asked permission to reopen its case "to introduce new evidence." Appellant's counsel then asked that the exhibits be removed from the courtroom, that the jury be instructed to disregard them and for a mistrial because

the articles had not been offered in evidence. The court overruled the motion and overruled defendant's objection to the offer of the exhibits in evidence.

■ The trial court did not abuse its discretion in permitting the state to reopen and make formal tender of the exhibits in evidence. A similar question was presented in State v. Robinson, Mo.Sup., 325 S.W.2d 465, 470 [6, 7], and the court there ruled:

"[6, 7] * * * It is well settled that the trial court has a broad discretion as to the order of proof and the reopening of a case. The hammer had in fact been exhibited to the jury and witnesses were examined and cross-examined concerning it. It was, therefore, actually in evidence, though not formally introduced prior to the close of the State's case. State v. Wilson, Mo., 248 S.W.2d 857, 859. There is nothing in the record showing any abuse of the discretion vested in the trial court in permitting the reopening of the case and formal admission of the hammer into evidence. State v. Dobbins, 351 Mo. 796, 174 S.W.2d 171, 172."

See also State v. Thornhill, 177 Mo. 691, 76 S.W. 948, 950.

■ Appellant also argues in this connection that "the exhibits were so prejudicial that a fair trial could not have been had." He points to the shotgun as "a blunderbuss about 40 inches or longer, an old model, being huge, menacing, devastating in its nature," and says that exhibiting it and all of the other garments all total "an undesirable impression upon the jury of the defendant's nastiness and that he should be punished for being a nasty individual." There is no merit in this argument. The items were either used in the commission of the crime or served to aid in identifying the criminals. The cited case of State v. Pearson, Mo.Sup., 270 S.W. 347, involving the waving of a homicide victim's bloodstained shirt before the jury, is. of no help to appellant.

■ Appellant next contends that the conviction should be reversed because the information charges that the offense occurred on September 8, 1968, whereas the evidence showed that the offense was committed on September 7, 1968. Time not being of the essence of the offense, this variance was not fatal. State v. Bates, 182 Mo. 70, 81 S.W. 408; State v. Tunnell, Mo.Sup., 296 S.W. 423, 425 [1, 2]; State v. Hushing, Mo.App., 274 S.W. 88.

■ Appellant contends that his pretrial motion to suppress the identification testimony of his victims should have been sustained because it was tainted by an illegal line-up. A hearing was held on defendant's motion. The four occupants of Rowe's auto testified that the moonlight and the headlights of Rowe's auto provided sufficient light at the scene of the offense to permit them to observe Payne and later identify him. The victims were called to the sheriff's office the next day. Rowe testified that he was sitting in the sheriff's office when two men walked in accompanied by officers and he recognized them. The other victims testified to the same effect. The deputy who arrested Payne testified that, prior to his identification by the victims, Payne was told "that he could have counsel and if he didn't have counsel he didn't have to talk to us and counsel would be furnished to him." The deputy said Payne did not request counsel. The trial court entered a finding that the state had established that any in-court identification of the accused by the victims would be based upon observation independent of the line-up, or whatever occurred at the sheriff's office on September 8, and that the occurrence in the sheriff's office would not taint the in-court identification. This finding by the trial court met the requirements of United States v. Wade, 388 U.S. 218, 241–242, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. Appellant does not demonstrate that the trial court's finding was unsupported by evidence or otherwise erroneous. The witnesses testified posi-

**810**

tively that their view of the defendant at the scene of the crime permitted their subsequent identification. The defendant was in close proximity to the witnesses. They had opportunity to see him on two separate occasions on the night of the offense. They provided the sheriff with a description of the robbers. No effort was made to show that the descriptions given did not fit appellant and his confederate. There is no merit in appellant's contention.

 Likewise, his contention that the issue of the line-up identification should have been submitted to the jury is without merit. The procedure for resolving this issue is that specified in Wade and Gilbert, supra. · The matter is not for the jury.

Appellant attacks the principal instruction of the court, Instruction No. 1, on the grounds that it was "ridiculous in length, to-wit, 16 lines, confusing and hard to understand." No effort is made to elucidate this charge. There is no showing that the instruction does not properly state the law. The length of the instruction may be accounted for, in part, by the fact that four victims and two principals were involved. In any event, its length alone would not support the necessary charge that it failed properly to inform the jury of the facts which they must find, under the law, in order to render their verdict in the case. Obviously, this is not such an instruction as was involved in State v. Ervin, 344 Mo. 1029, 130 S.W.2d 580, relied upon by appellant. There, interlineation and erasures had produced an instruction of "illegible words and jumbled phrases." 130 S.W.2d 1. c. 582. No such situation is found here. Nor is the instruction subject to the complaint that it would have permitted a finding of guilt without requiring a felonious taking. The instruction clearly sets forth such a required finding.

Appellant objects to Instruction No. 3, on the burden of proof and reasonable doubt, on the grounds that it does not state that the presumption of innocence continues throughout the trial and does not properly define reasonable doubt. The instruction in this case is substantially the same as was recently upheld against a similar objection in State v. Wiley, Mo.Sup., 442 S.W.2d 1, 2 [2].

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., HOLMAN, J., and HENLEY, Alt. J., concur.