# AMELIA HEBENHEIMER v. CITY OF ST. LOUIS, Appellant.

### Division One, December 1, 1916.

1. **FALSE TESTIMONY:** Matter for Trial Jury and Court. Whether or not a witness testified falsely concerning a material issue is a matter for the determination of the trial jury and the trial court. and if they decline to discover perjury in his testimony the appellate court will not. Especially should such be the ruling where the motion for a new trial contains no complaint that he had testified falsely, the witness had at prior trials given substantially the same testimony, and there was nothing inherently improbable in it, although if true it would tend to shield a brother-in-law who is not made a party, and the notice he swears he gave was given to an officer who died prior to the first trial.

2. **TESTIMONY UNWORTHY OF BELIEF:** Numerously Contradicted. The fact that many persons, without injury, passed over the coal hole in the sidewalk into which plaintiff fell, and that several of them testified positively that the cover was not defective, will not authorize the appellate court to say that the positive testimony of plaintiff and her witnesses that the cover was defective and too small was unworthy of belief. But the contradictory testimony simply made an issue of fact for solution by the jury.

3. **NEGLIGENCE:** Coal Hole in Sidewalk: Structural Defect. The cover of a coal hole in a sidewalk, made to fit, not into an iron collar, but to rest upon a stone shoulder, which cannot be fastened from within and which tips when trodden upon, is such a structural defect as a city would not allow if it used reasonable diligence.

4. ———: ———: Notice in Case of Structural Defect. If the defective cover of a coal hole in the sidewalk is a structural one, the city is charged with notice of the defect from the beginning.

5. ———: ———: Actual Notice. Evidence that notice was given to a police officer while he was on duty on a beat which embraced the sidewalk in which there was a defective coal-hole cover, and evidence that police officers on duty on the beat examined the cover and testified that it was secure, is evidence of actual notice —the jury being free to reject the officers' testimony that the cover was secure, and to find that when they made the examination they found the defective condition which plaintiff's witnesses described.

6. ———: ———: Contributory Negligence. The duty of a city is to use ordinary care, keep its sidewalks in a reasonably safe condition for travel, in all circumstances; and the duty of a pedestrian is to exercise ordinary care for her safety. But a pedestrian is not

bound to look for hidden dangers; all that is required of her is that she walk with her eyes open, observing her general course and in the usual manner. And where there is evidence that while using such care she fell through a coal-hole in a sidewalk and was injured, the question of her contributory negligence is one for the jury to decide.

7. ———: ———: Instruction: Reasonably Safe. An instruction which requires the jury to find that the sidewalk, at the time plaintiff stepped on the cover to a coal hole therein and fell through, was in "an unsafe, insecure and dangerous condition" is equivalent to a requirement that they find it was not reasonably safe.

8. ———: ———: Similar Phraseology in Defendant's. Defendant cannot complain of the phraseology of plaintiff's instruction if instructions asked by him and pressed on the attention of the jury contained the same phraseology.

9. ———: Measure of Damages: Married Woman: Diminishing Ability to Work. An instruction, on the measure of damages by a married woman whose ordinary vocation is that of a housewife, who sues for personal injuries, which includes as one of the elements of damage "the diminishing ability of plaintiff to work and labor," is not erroneous.

10. ———: Defective Cover to Coal Hole: Evidence of Prior Slipping and Tilting. In a suit by a pedestrian to recover damages for personal injuries received when she fell through a coal hole in a sidewalk, alleged to be due to a defective cover, it is not error to admit evidence tending to prove that the coal-hole cover, prior to her injury, frequently had been observed to slip and tilt when passers-by stepped upon it, no evidence that others had been injured thereby being admitted. Such evidence is competent to show the existence of a dangerous condition. [Following Charlton v. Railroad, 200 Mo. l. c. 442, and overruling Goble v. Kansas City, 148 Mo. 470.]

11. ———: ———: Evidence of Other Coal Holes. Where no showing is made that the witness knew the condition of other coal holes in the city generally, and no showing is made of what the witness would have testified had he been permitted to answer, the complaint that the trial court erred in excluding answers to questions propounded, on cross-examination, as to whether the coal hole which injured plaintiff was similar to coal holes generally in the city sidewalks, is not for adjudication.

12. ———: ———: Ordinance Requiring Officers to Report Defects. It is not error, in a suit by a pedestrian for injuries due to a defect in a sidewalk, to admit in evidence the ordinances of the city defining the duties of police officers with respect to reporting defects in streets. Besides, the city cures the error, if there is any, by making independent oral proof of the duty of police officers to

report defective sidewalks, and proving the practice under the ordinance for the purpose of showing no defect was reported.

13. ———: **Excessive Damages:** $8388. The injury occurred ten years prior to the trial; immediately · following the accident she was confined to her bed seven months, and many times since has been in like helpless condition for days; at the time of the injury she was thirty-five years old, strong and active and in good health; since she has almost constantly suffered great pain; cannot sit down or lie down for over an hour at a time, and does not sleep well; her spinal cord was injured, so that her lower limbs are partially paralyzed, and she cannot walk without crutches and not well with them; an operation could not be performed except at the risk of her life, and then without any certainty of benefit if she survived. *Held*, that a verdict for $8388 is not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields*, Judge.

AFFIRMED.

*Charles H. Dawes, Truman P. Young* and *Everett Paul Griffin* for appellant.

(1) Where a fraud or deceit has been practiced by one party on the other, or the court is satisfied that perjury or mistake has been committed by a witness, and is also satisfied that an improper verdict or finding was occasioned by any such matters, and that the party has a just cause of action or of defense, it shall, on motion of the proper party, grant a new trial. R. S. 1909, sec. 2022; Standard Co. v. White Co., 122 Mo. 258; Lovell v. Davis, 52 Mo. App. 342; Hurley v. Connally, 186 Mo. 225; Parker v. Britton, 133 Mo. App. 270; Ridge v. Johnson, 129 Mo. App. 541. (2) When the testimony given by the plaintiff is unbelievable, the court may sweep said testimony aside. Fagg v. Railroad, 185 Mo. App. 79; Stotler v. Railroad, 204 Mo. 619; Walker v. Railroad, 193 Mo. 453; Huggart v. Railroad, 134 Mo. 673. (3) The construction and maintenance of a coal hole with the cover thereon is a perfectly lawful and proper use to be made of the public sidewalks. Carvin v. St. Louis, 151 Mo. 334; 28 Cyc. 1382 (c). (4) The tenant was liable for negligence in the maintenance of the coal-hole

cover in question, if the evidence of the plaintiff is true. Kilroy v. Wackman, 242 Mo. 74; 4 Dillon, Mun. Corps. (5 Ed.), sec. 1725.  (5) The city is not liable for a defective condition in a sidewalk of which it did not have actual knowledge, or which had not existed for such a length of time that the city, by the use of ordinary care and diligence, would have discovered same in time to have repaired the defect and rendered it safe prior to the date of the accident.  Carvin v. St. Louis, 151 Mo. 334; Baustian v. Young, 152 Mo. 317; Reedy v. Brewing Assn, 161 Mo. 523; Kaiser v. St. Louis, 185 Mo. 366; Ryan v. Kansas City, 232 Mo. 471.  (6) There was no evidence that the city ever had actual notice, nor is there any evidence of constructive notice.  (7) Notice to a police officer is not notice to the city, unless he was the officer walking the beat of the premises in which the alleged defective place existed.  Carrington v. St. Louis, 89 Mo. 208; Willis v. St. Joseph, 184 Mo. App. 428; 6 McQuillin on Mun. Corps., sec. 2810.  (8) If there was any defect in the condition of the coal hole in question in this case, it was a latent defect and the city is not liable. Baustian v. Young, 152 Mo. 317; Carvin v. St. Louis, 151 Mo. 334; Franke v. St. Louis, 110 Mo. 516; Buckley v. Kansas City, 156 Mo. 16.  (9) In this case the court should not have permitted plaintiff's case to go to the jury because plaintiff was guilty of contributory negligence, as there was nothing to obstruct her view; it was high noon—broad daylight—and she did not look to see where she was going, when looking would have prevented the accident, if the coal hole cover was not in place. Ryan v. Kansas City, 232 Mo. 471; Wheat v. St. Louis, 179 Mo. 572; Coffey v. Carthage, 186 Mo. 573.  (10) Evidence of other accidents from the same cause is not admissible in a suit against the city for damages on account of an alleged defect in a sidewalk.  Goble v. Kansas City, 148 Mo. 475; King v. St. Louis, 250 Mo. 501; Smart v. Kansas City, 91 Mo. App. 594.  (11) Instruction number one, the main instruction, is erroneous, in that it required a higher degree of care on the part of the city than the law requires.  Horan v. Independence,

176 S. W. 1061; Ryan v. Kansas City, 232 Mo. 471; Barnes v. St. Joseph, 151 Mo. App. 528; St. Louis v. Kansas City, 110 Mo. App. 653. (12) Instruction number 19 is clearly erroneous as it permitted the plaintiff to recover for "the diminished ability of plaintiff to work or labor." This is an element of damage which her husband was entitled to recover for, as the evidence showed that at the time of the injury to her, her duties were purely of a household character. The inability of plaintiff to perform her household duties in the future was a loss to him and not to her. Wallis v. Westport, 82 Mo. App. 523.

*H. A. Loevy* for respondent.

(1) This point, that Kuehn committed perjury in testifying that he told Officer Regan about the dangerous cover and that therefore the verdict should be vacated, cannot be considered. (a) Because it is not made in the motion for new trial. (b) Such a point is addressed peculiarly to the discretion of the trial judge who saw and heard the accused witness testify. (2) If landlord leases with dangerous coal hole in sidewalk and tenant permits it to remain, both landlord and city are liable. Marion v. Kansas City, 74 Mo. App. 138; Fehlhauer v. St. Louis, 178 Mo. 647-8. All three are liable for a nuisance irrespective of negligence. Memphis v. Miller, 78 Mo. App. 67. Landlord is liable with city, not because he is the owner, but for his negligent omission to perform duty imposed by law (citing Benjamin, 133 Mo. Mo. 274, coalhole case). Perrigo v. St. Louis, 185 Mo. 274; Mancuso v. K. C., 74 Mo. App. 138; Reeds v. St. Louis, 161 Mo. 533-4. City cannot shift liability to either landlord or tenant. Benton v. City, 217 Mo. 709. City is liable even if ignorant of defect. Shippey v. Kansas City, 254 Mo. 21. The city should not allow such a loose cover to be in the sidewalk at all. Campbell v. Chillicothe, 239 Mo. 461.

BLAIR, J.—Respondent fell into a coal hole in a sidewalk in St. Louis, and this appeal is from a judgment for

$8388 she recovered against the city for damages for injuries she suffered.

There was evidence tending to show that while respondent was walking in front of 1006 Olive street, one of the principal streets of the city of St. Louis, she stepped upon the cover of a coal hole; that the cover tilted and she fell into the opening, sustaining serious injuries; that the sidewalk was granitoid except a block of stone about three and one-half feet square, through which the coal hole had been cut; that the cover of the coal hole was a round iron plate; that an opening in the stone was cut down about the thickness of this plate and then a "shoulder" of stone was left upon which it was intended this plate should rest; that the diameter of the plate was about an inch less than the diameter of the opening in the stone above the shoulder upon which the plate or cover rested, and that the shoulder itself was about an inch across; that for several years before respondent was injured, and as far back as respondent's witnesses had observed the place, the coal-hole cover had been seen to slip and tilt and slide out of place when stepped upon; that there was a hole in the center of the plate and an iron pin therein, but there was no fastening or appliance designed to hold the plate or cover in place; that one police officer on the beat had been notified directly of the condition of the coal hole; that other officers on the beat had examined the coal hole a number of times; some of these, testifying for appellant, said they examined the coal hole but found it secure. There was also evidence that the pin through the center of the cover was placed therein for the purpose of holding the cover in place by means of a wooden bar through which the pin was designed to run and which was held against the lower side of the stone by a nut upon the lower end of the pin. There was evidence pro and con upon the question whether any such bar had been in use during several years prior to the time respondent was injured. Numerous errors are assigned.

269 Mo.—7

I. It is urged the record indicates Kuehn testified falsely concerning the notice he said he gave Officer Reagan of the defective condition of the coal-hole cover, and then it is insisted this should work a reversal of the judgment and a remandment of the cause. The motion for new trial makes no complaint of this sort. Kuehn was testifying some ten years after the injury to respondent occurred and previously had given substantially the same testimony several times. There was ample opportunity to investigate the truth of his story. There was nothing inherently improbable in it. The fact that the officer he claimed to have notified died prior to the first trial and the fact that Kuehn's brother, tenant of the property, was not joined as a defendant, do not necessarily render Kuehn's testimony untrue. His credibility was for the jury and the trial court, and doubtless the argument now made to us was pressed upon their attention with a view to destroying the weight of his testimony before the jury. This was its proper function. With the witness before them neither trial judge nor jury seem to have detected perjury.

*False Testimony.*

II. It is insisted the testimony of plaintiff and her witnesses is unworthy of belief and that the judgment should be reversed for this reason. In support of this contention the case of Fagg v. Railroad, 185 Mo. App. l. c. 84, 85, is cited. This was a case in which the court applied the rule that one who is injured on a railroad crossing and testifies he kept a lookout for approaching trains will be held guilty of contributory negligence, despite his testimony, when the situation was such that he must have seen the train which injured him if he looked at all. That rule is not applicable here. The fact that many persons passed over the coal hole without injury and that several testified positively the cover was not defective and the testimony of plaintiff and her witnesses as to the defective condition thereof simply made a question of fact for solution by the jury.

*Testimony Unworthy of Belief.*

III. Another contention is that the defect was a latent one and that the city had no actual notice and that the exercise of ordinary care would not have brought it notice thereof. The cases cited in support of this proposition have previously been dealt with in circumstances very like those confronting us on this record. [Drake v. Kansas City, 190 Mo. l. c. 379 et seq.] The defects complained of in this case are sufficiently like those in the Drake case to make the rule there applied applicable here. So far as notice is concerned, the defect being a structural one, the city is charged with notice from the beginning. [Drake v. Kansas City, supra, l. c. 384.] Further, had it been necessary, there is evidence of both actual and constructive notice. So far as concerns the evidence tending to show that a method of fastening the coal-hole cover was provided, that is disposed of by the principle announced by the Supreme Judicial Court of Massachusetts in dealing with a case in which the testimony showed a fastening had been provided like that appellant contends was in use in this case. That court in Keating v. Boston, 206 Mass. l. c. 330, 331, said:

*Latent Defect: Notice.*

"If it were impossible to construct a coal-hole cover which would not tip up when stepped upon unless fastened from within, a different question would be presented from that which we have to pass upon. But it is a matter of common knowledge that coal-hole covers set in iron collars, although unfastened, remain firm and in place when trodden upon. Sewer covers and the covers of other manholes leading to conduits under public streets cannot be fastened from within and for that reason are always—or at least almost always—set in an iron collar, and when so set do not tip up when trodden upon.

. . . . . . . . .

"The city had notice that the coal hole was in the sidewalk. That made it its duty to use due diligence to protect the traveling public from that hole, and the question is whether it has used due diligence, if the only protection against the hole is a cover which will tip up

if stepped upon unless fastened; or, to state it in another way, the question is whether in the exercise of due diligence the city can allow such a cover to remain, relying on the occupant of the abutting house to fasten it. We can have no doubt that in case of the covers of manholes in the street which cannot be fastened from within a finding would be warranted that a cover which tipped up when trodden upon was a danger which a city would not allow if it used reasonable diligence. The question is not what view we take upon the question which arose in the case, but what view a jury could take upon it. We are of opinion that a jury is warranted in finding that a coal-hole cover which when trodden upon will tip up unless fastened is so likely to be unfastened that a city which used reasonable diligence after it had or in the exercise of proper care might have had notice of this condition would not allow it to be there at all.''

This case was cited with approval in Campbell v. Chillicothe, 239 Mo. l. c. 461.

It is said notice to police officers was not notice to the city under the rule in Carrington v. St. Louis, 89 Mo. 208; Willis v. St. Joseph, 184 Mo. App. 428, and Haxton v. Kansas City, 190 Mo. l. c. 67, because it was not shown such officers were the officers on duty on their beats at the time. In the first place, the contention is disposed of by the fact that the defect was of structural character, and, therefore, the city is held to have had notice from the beginning, as already pointed out. Again, there was evidence tending to show notice was given Reagan while he was assigned to this beat and while he was in uniform, and there is evidence he wore his uniform only when on duty. Further, there was evidence police officers on duty on the beat examined this coal hole. They testified it was secure. The jury were free to reject this part of their testimony and find that when they made the examination they found the condition respondent's witnesses described. There was ample evidence of actual notice, aside from that implied from the character of the defect respondent contends caused her injury.

IV. It is contended respondent was, as a matter of law, guilty of contributory negligence. The city's duty was to use ordinary care to keep the sidewalk in a reasonably safe condition for travel, in all the circumstances. Respondent's duty was to exercise ordinary care for her own safety. She was not, however, "bound to look for hidden dangers." All that was required of her was that she walk with her eyes open, observing her "general course and in the usual manner." [Earl v. Dlask, 126 Iowa, 1. c. 365.] The question whether respondent exercised proper care was for the jury.

*Contributory Negligence.*

V. An instruction for plaintiff told the jury, in substance, that if they found Olive Street to be a public street, improved as already described, and found the sidewalk contained a coal hole, constructed and covered as above substantially set forth in the statement, and that it had been in place several years, and that respondent, in the use of ordinary care for her own safety, was walking along the sidewalk and stepped on the coal-hole cover and it slipped or tilted, and that thereby she was caused to fall and was injured and that "the cover or lid of said coal hole was at that time in an unsafe, insecure and dangerous condition;" and that the city knew or by the exercise of ordinary care would have known of the existence of said loose, unsafe, dangerous and insecure cover in time, by the exercise of ordinary diligence, to have made it safe and secure before plaintiff was injured, then the jury should find against the city.

*Instruction on Negligence.*

It is urged the instruction required the city to make the sidewalk absolutely safe and secure, and fails to set out "correctly the duty of the city as to its sidewalks, namely, to keep them in a reasonably safe condition for travel in the ordinary modes by persons exercising ordinary care." Such is counsel's position.

If the jury found the coal hole and, therefore, the sidewalk to be in "an unsafe, insecure and dangerous" condition, this was equivalent to a finding that it was not

reasonably safe. [Squiers v. Kansas City, 100 Mo. App. l. c. 631.] Other cases in the briefs support this view and show that this court has frequently assumed it to be correct. Another consideration is that appellant asked and secured instructions containing the same phraseology; and, further, other instructions pressed upon the attention of the jury the rule upon which appellant relies. The objection made is not tenable. The authorities cited by respondent fully support this conclusion.

VI. In the instruction on the measure of damages, given on its own motion, the trial court included as one of the elements of damage "the diminished ability of Instruction plaintiff to work and labor." It is conon Measure tended this is not an element for which a of Damages. married woman can recover. The cases cited hold (1) that recovery for loss of earnings cannot be permitted in the absence of evidence tending to show that such a loss resulted from the injury (Davidson v. Transit Co., 211 Mo. l. c. 346) and (2) impairment of ability to attend to the duties of her ordinary vocation (that of housewife) cannot be made the basis of recovery by a married woman. [Wallis v. Westport, 82 Mo. App. l. c. 527, 528.] The question was not involved in the Davidson case and is settled against appellant in Perrigo v. St. Louis, 185 Mo. l. c. 288 et seq., in which the Wallis case is discussed.

VII. Appellant contends it was error to admit evidence tending to prove the coal-hole cover, prior to the time of respondent's injury, frequently had been observed to slip and tilt when passers-by stepped Prior Slipping upon it. No evidence any other person of Cover to Coal Hole. had been injured thereby was admitted. Appellant relies upon Goble v. Kansas City, 148 Mo. 470. The holding in that case is directly contrary to what was subsequently said in Charlton v. Railway, 200 Mo. l. c. 442, is opposed to the rule adhered to by the Supreme Court of the United States (District of Columbia v. Armes, 107 U. S. 519) and to that previ-

ously announced by the Kansas City Court of Appeals (Golden v. City of Clinton, 54 Mo. App. 100) and to the great weight of authority elsewhere. Besides, the evidence admitted in this case disclosed no previous injuries to anyone, but did tend to show that the effect of stepping upon the coal-hole cover was to cause it to slip and tilt, and, consequently, to show the existence of a dangerous condition. Globe v. Kansas City, 148 Mo. 470, in so far as it conflicts with this view, is overruled.

VIII. Appellant complains that the court excluded answers to questions propounded to Mr. and Mrs. Kuehn, on cross-examination, as to whether the coal hole which injured plaintiff was similar to coal holes generally in place in the city sidewalks. No showing was made that the Kuehns knew the condition of other coal holes in the city generally, nor do counsel assert that the record shows what the witnesses would have said had they been permitted to answer. In such circumstances it is not necessary to discuss the question whether evidence as to other coal holes was admissible.

**Exclusion of Testimony.**

IX. There was no error in admitting the ordinances of the city defining the duties of police officers with respect to reporting defects in streets. The objection made to this that the city is not liable for damages for the violation of its ordinances seems to arise out of a misconception of the purpose for which the ordinances were offered. In addition, appellant made independent oral proof by its witnesses of the duty of officers to report defective sidewalks, proving the practice under the ordinance and proving it for the purpose of showing no report was made, relying upon the absence of a report as evidence tending to show there was no defect in the coal hole. The point is ruled against appellant.

**Reporting Defects: Ordinances.**

X. Finally, it is insisted the damages are excessive. This case was tried several times. The trial resulting

in the judgment from which this appeal was taken occurred about ten years after respondent was **Excessive Verdict.** injured. Immediately following her fall, she was confined to her bed for seven months or more. Many times thereafter she was in a like helpless condition for days. When injured she was thirty-five years old and a strong, active woman in good health. Thereafter she suffered great pain almost constantly and was unable to remain in any one position for any considerable time. She could not sit or lie down over an hour at a time. She did not sleep well. Her spinal cord was injured so that her lower limbs were partially paralyzed and she could not walk without crutches and not well with them. Needles stuck into her limbs caused her no pain. There was evidence tending to show that an operation could not be performed except at the risk of her life and then without any certainty of benefit to her in case she survived; that her injuries were permanent and that she had grown worse, as time went on, instead of better. Her back pained her almost constantly and quite severely. As to her injury and its effect upon her, respondent is corroborated by numerous witnesses, professional and lay. The great weight of the evidence supports her claim that she has suffered a very serious injury which has crippled her for life and continues to cause her continuous suffering without much hope of its alleviation in the future. In these circumstances, the judgment cannot be said to be excessive. It is affirmed. All concur.