Tɪɴsʟᴇʏ H. Wᴏᴏᴅ, Respondent, v. Sᴛ. Lᴏᴜɪs Pᴜʙʟɪᴄ Sᴇʀᴠɪᴄᴇ Cᴏᴍ-ᴘᴀɴʏ, a Corporation, Appellant, No. 42171—246 S. W. (2d) 807.

Court en Banc, March 10, 1952.

1104

*Mattingly, Boas & Richards* and *Lloyd E. Boas* for appellant.

*Louis E. Miller, Harry M. James* and *B. Sherman Landau* for respondent; *Miller & Landau* of counsel.

1106

■■■■

■■■■ COIL, C.—A jury awarded respondent $35,000 damages for personal injuries. This appeal is from the judgment entered thereon. We shall hereafter refer to the parties as plaintiff and defendant.

Plaintiff contends that defendant's brief violates S. C. Rule 1.08 in that, plaintiff says, the brief contains no statement demonstrating the jurisdiction of this court and the statement of facts does not constitute a fair statement as required by the rule. We note at page 2 of defendant's brief: "Since the amount involved is $35,000.00, this court has jurisdiction." We have examined defendant's statement of facts in the light of the contention made by plaintiff, and do not find that it constitutes an unfair statement or conveys, as plaintiff claims, a "distorted impression" of the facts.

Defendant alleges error in these respects: failure of the trial court to sustain its motion for directed verdict at the close of all the evidence for the reasons that plaintiff's evidence was not sufficient, that any negligence of defendant was not a proximate cause of plaintiff's injuries, and plaintiff was contributorily negligent as a matter of law; in each of two instructions; in admitting certain evidence; in permitting prejudicial argument. Defendant also contends that the verdict is excessive.

Pertinent evidence will be stated most favorably to plaintiff.

Manchester Avenue is a public street in St. Louis running generally east and west. Schaeffer Place runs northeast from the north side of

Manchester. Defendant's double streetcar tracks were at the time in question on the south side of Manchester Avenue, the south track for eastbound streetcars and the north track for westbound streetcars. Eastbond vehicular traffic traveled in the space occupied by the eastbound track and westbound vehicular traffic traveled in the 28' or 29' north of the north rail of the westbound track. In the early morning of February 15, 1948, plaintiff drove his automobile eastwardly on Manchester in the eastbound streetcar track. When he reached the place where Schaeffer intersects on the north, he drove to his left into the space occupied by defendant's westbound track for the purpose of passing an automobile which was proceeding immediately in front of him. As he drove to his left, preparatory to passing, he observed defendant's westbound streetcar, either stopped or approaching from the east, approximately 600' away and observed that there was no other vehicular traffic between him and the streetcar. Plaintiff was driving about 20 or 22 m.p.h. as he proceeded to pass the other automobile which was traveling at about 15-18 m.p.h., and when he had traveled a distance of 75' or 100' and had sufficiently cleared the other automobile, he attempted to drive to his right in order to pull back into the eastbound streetcar track and traffic lane; at that time the westbound streetcar was 300' or 400' away and moving toward him. He was unable to drive to his right because the rear wheels of his automobile were caught in the troughs or depressions in the street existing by reason of the rails of the westbound track being depressed some 3" or 4" below the adjacent pavement, by ridges formed by ice at the respective edges of the pavement adjacent to the rails, and by the condition of the pavement adjacent to the rails. Plaintiff then slowed to 10 m.p.h., put his automobile in low gear, then in second gear, then accelerated to 20 m.p.h., all in an attempt to, and all the while maneuvering to, get into the eastbound streetcar track and traffic lane. His front wheels were not caught and, as he maneuvered or skidded along, attempting to extricate the rear wheels, his front wheels generally straddled the south rail of the westbound track—so that he moved or skidded at times in a "sideway" position. When plaintiff had traveled an additional 100' to 150', or a total distance of 175' to 250' from the time he pulled out to pass, the left front and left side of his automobile collided with the left front corner of defendant's westbound streetcar which was still moving westwardly at the time of the collision.

The westbound streetcar, from 600' to the east of plaintiff, continued its westward approach at a constant speed of from 15 to 25 m.p.h. until it had reached a point about 6' or 8' from the point of collision, at which time its emergency stopping apparatus was applied. Both vehicles became stationary at approximately the point of impact, plaintiff's automobile being pushed slightly to the west. The impact

was violent, resulting in the death of plaintiff's wife and injuries to plaintiff.

Other evidence will be referred to in the course of the opinion.

Plaintiff went to the jury on primary negligence submitting two main instructions. Instruction No. 1 hypothesized violation of an ordinance requiring defendant to keep in repair the space between the rails of its tracks and the space between the tracks, and instruction No. 2 submitted violation of the St. Louis vigilant watch ordinance.

Defendant contends that plaintiff's evidence is so contradictory, uncertain and speculative as to not constitute substantial evidence. This contention is based upon an argument about as follows: that plaintiff, by positive and repeated testimony, conclusively established that from the time plaintiff pulled to his left to pass the preceding automobile until the point of collision, he traveled not in excess of 250'; that he skidded or maneuvered in an attempt to turn to his right for a distance of not in excess of 150'; that plaintiff marked the place of collision on a certain plat, defendant's Exhibit 1, which place, according to the measurements disclosed by the plat, was 250' farther east than the place of the collision if plaintiff's testimony that he traveled a total distance not in excess of 250' was true. Defendant says that if plaintiff's testimony that the streetcar was 400' east of him at the time his automobile began to skid or plaintiff began to attempt to turn back to his right is true, and if the place of the collision was the place indicated by plaintiff's mark on defendant's Exhibit 1, then defendant's streetcar remained stationary at the place of the collision while plaintiff skidded or maneuvered 400' into it; that if plaintiff skidded or maneuvered for not more than 150', as he positively testified, and the accident occurred at the place marked by plaintiff on defendant's plat, then plaintiff traveled 350' before he began to skid or maneuver in an attempt to turn back to his right rather than a maximum of 100' as plaintiff testified. Defendant concludes that there were different versions of how the accident might have happened, and that the jury would necessarily be forced to guess and speculate to determine which was the true version; that where evidence is so conflicting and contradictory it is wholly unreliable and not sufficient to support a verdict.

We think this contention is without merit. The entire argument is based upon the fallacious premise that plaintiff was conclusively bound by defendant's testimony as to the accuracy of the plat, defendant's Exhibit 1. Defendant used its exhibit in the cross-examination of plaintiff and other witnesses adduced on behalf of plaintiff, and had plaintiff and such other witnesses make certain marks thereon. In these examinations, defendant specifically assumed that the plat was drawn to a scale of 1" to 20', that the plat was accurately drawn, and that distances shown on it were accurate. It is true that defendant proved as part of its case that the plat was accurate and was drawn to

a scale of 1″ to 20′. Plaintiff did not admit, nor was there any evidence adduced by plaintiff which admitted or corroborated, the accuracy of the plat. The plat was evidence introduced by defendant and plaintiff was not bound by it. It was for the jury to determine whether plaintiff, by putting an ''X'' mark on defendant's exhibit which, according to the measurements of the plat, would have placed the scene of the accident much farther east than plaintiff's other testimony placed it, was giving two versions of the same accident, or whether the plat itself did not accurately portray the situation; or whether plaintiff failed to understand the plat and what it portrayed and, in placing the ''X'' mark on it, was simply estimating the location of the accident. In any event, the plat, like other evidence introduced by defendant, was not conclusive of the facts it purported to portray and was not such that plaintiff was bound by the measurements it disclosed. Eliminating the mark plaintiff made on defendant's plat, plaintiff's testimony as to the occurrence of the accident is clear, not conflicting, not contradictory, and constitutes substantial evidence for the jury.

In view of what we have said, it will serve no useful purpose to discuss the cases cited by defendant in support of the proposition that plaintiff's evidence was not substantial in this case. Suffice it to say that those cases, of which Sammons v. Kansas City Public Service Co., Mo. App., 179 S. W. 2d 620, Bauer v. Wood, 236 Mo. App. 266, 154 S. W. 2d 356, and Rainwater v. Wallace, 351 Mo. 1044, 174 S. W. 2d 835, are illustrative, do support the proposition that where plaintiff, by positive testimony, establishes with equal certainty two versions of the same accident, such testimony furnishes no basis for a recovery because it is impossible for the jury, without speculating and guessing, to determine which version is the correct one. As we have noted, plaintiff's evidence was not so contradictory and conflicting as to be unreliable, and those cases are not applicable.

Defendant further contends that its negligence, if any, was not a proximate cause of the collision. There is no dispute about the well established rule restated in many cases cited by defendant, that to make a submissible case there must be substantial evidence not only of negligence, but substantial evidence that such negligence directly caused or contributed to directly cause plaintiff's injuries; and that the usual test as to causal connection is whether the facts show that absent the negligent act, the injuries would not have been sustained. Defendant says that before the jury could find that the failure of defendant's operator to stop the streetcar in observance of the vigilant watch ordinance was a proximate cause of the collision, the jury would necessarily have to find that plaintiff would have gotten out of the westbound streetcar track within some certain distance. We are unable to agree. Defendant argues that even if the jury found that defendant's operator, in the proper observance of the

vigilant watch ordinance, should have stopped the streetcar when plaintiff's automobile was 200' or 300' or 400' away rather than proceeding at unabated speed until 6' or 8' from plaintiff's automobile before taking steps to bring the streetcar to a stop, nevertheless, there was no evidence from which the jury could find that plaintiff would not have, in any event, continued on the westbound track directly into the streetcar whether it was moving or stopped. The evidence does not as a matter of law justify such a conclusion. The fact that plaintiff, in the path of a streetcar approaching at unabated speed, continued to travel on the track until the collision, all the while attempting to remove himself from the path of the moving streetcar, does not compel the conclusion that plaintiff would have so acted had the streetcar been stationary at the time or shortly after plaintiff's difficulty began. Defendant's conclusion is based upon pure presumption and speculation. On the contrary, a jury could well find that, had defendant's operator observed the vigilant watch ordinance and brought the streetcar to a stop in the shortest distance possible upon the first appearance of danger, plaintiff would have acted in a manner to avoid a collision. The jury could reasonably find that plaintiff would have stopped his automobile prior to the collision and would not have proceeded into a streetcar which had been stopped immediately after or shortly after plaintiff's difficulty began. The jury could reasonably find that defendant's motorman could have stopped the streetcar in 35' to 40' at a time when he saw plaintiff's automobile in a position of danger 300' to 400' away. If he had then stopped, the jury could well find that plaintiff would have been under no compulsion to extricate himself from impending danger created by the approaching streetcar and that the collision would not have occurred.

Furthermore, plaintiff testified that his wheels had begun to take hold just prior to the collision. This alone was sufficient evidence from which a jury could reasonably find that the collision would not have occurred but for defendant's negligence in failing to stop upon the first appearance of danger.

It is apparent from what we have said that there was ample evidence from which the jury could find that the negligence of defendant was a proximate cause of plaintiff's injury.

Defendant contends that plaintiff was guilty of contributory negligence as a matter of law. In order to so hold, we must conclude that reasonable minds could not differ as to plaintiff's negligence; otherwise the question of plaintiff's contributory negligence was for the jury. Russell v. Johnson, 349 Mo. 267, 272, 273, 160 S. W. 2d 701, 704.

Plaintiff testified that he had theretofore driven on Manchester Avenue; that he had driven an automobile for some 15 years; that his headlights were in good condition and showed the general condition

of Manchester; and that he knew that there was ice in certain spots on the streets, including Manchester, on the night in question. While this evidence shows a general familiarity with the condition of the westbound track, there is no evidence which compels the conclusion that plaintiff knew or should have known of the effect of the depressed condition of the rails in the westbound tracks, the effect of the condition of the pavement between the rails, or of either the fact of, or the effect of, ice ridges at the edges of the pavement adjacent to the rails of the track. On the contrary, plaintiff's evidence indicates that his knowledge as to the effect of these conditions on a vehicle traveling in the westbound track was gained only after he had traveled therein for a distance of approximately 100'. Plaintiff saw defendant's streetcar 600' to the east of him at the time he pulled from the eastbound track to the westbound track for the purpose of passing an automobile traveling about 18 m. p. h. As heretofore noted, after he had traveled 100', the rear wheels of his automobile became caught in the depressions in which were located the rails of the westbound track. According to plaintiff's evidence, he would have completed passing the other automobile and would have returned to the eastbound track when the streetcar was 300' or 400' away were it not for the fact that his wheels became caught. Thus, even though plaintiff was generally familiar with the condition of the street, and even though its specific condition was shown to some extent at least by his headlights, and even though plaintiff saw defendant's streetcar approaching 600' away, this evidence does not convict plaintiff of knowledge of the effect of the condition of the track upon a vehicle using it for passing purposes. The fact that the streetcar was approaching 600' away does not compel the conclusion that it was apparent to plaintiff that he could not pass the other automobile with reasonable safety. The fact that a streetcar was approaching is not so important; it is, rather, the proximity of the approaching streetcar which determines whether it should have been apparent to plaintiff in the exercise of ordinary care that he could not pass the other automobile with reasonable safety. Under the circumstances, we are unable to say that reasonable minds could not differ on the proposition of whether plaintiff was negligent in pulling from the eastbound traffic lane into the westbound streetcar track to pass the other automobile, when normally and but for his wheels becoming caught, he would have returned to his proper traffic lane when the streetcar was still 300' to 400' away.

After plaintiff had reached a position in the westbound track and had traveled therein about 100' and was ready to turn to his right back into the eastbound traffic lane, and when he realized that his rear wheels were caught in the depressions in which the tracks were located, plaintiff put on his brakes, slowed to about 10 m. p. ▉ h., put his car in low gear, then in second gear and accelerated to a

speed of 20 m. p. h. During all this time, he was unsuccessfully attempting to pull to his right and continuing to turn his front wheels back and forth across the south rail of the westbound track in an attempt to get back into the eastbound traffic lane. These actions continued until the time of the collision. Plaintiff testified that his wheels had begun to take hold just before the collision. It is true that plaintiff proceeded for a distance of 100' to 150' after he realized that his rear wheels were caught and realized that he was having difficulty in extricating them. It is further true that we could speculate and say that, if plaintiff had come to a dead stop immediately or had used some other driving method to extricate himself, the collision would not have occurred. However, it is clear to us that the jury could reasonably find that, after plaintiff realized that his wheels were caught, he acted under a well-founded apprehension of impending danger which produced in him a state of excitement or fright and that this apprehensive condition or emergency was produced by the negligence of the defendant in continuing to run its streetcar toward him at the same constant speed, after the motorman discovered or should have discovered plaintiff in a place of danger. Plaintiff's actions must be judged from the standpoint of whether he exercised the highest degree of care in an emergency. Doyel v. Thompson, 357 Mo. 963, 970, 971, 211 S. W. 2d 704, 708, 709; Clark v. Atchison & Eastern Bridge Co., 324 Mo. 544, 562, 24 S. W. 2d 143, 152.

We have held that plaintiff was not guilty of negligence as a matter of law in originally driving into the westbound car track and thus the jury could reasonably find that plaintiff was not negligent in creating or contributing to the emergency situation. We must therefore determine whether his conduct was negligent from the time his difficulty arose in the light of the emergency facing him. Considering the circumstances as they there existed, the approach of the streetcar at an unabated speed, and the fact that plaintiff was continuously attempting to extricate himself from the path of the approaching streetcar, we cannot say that plaintiff was guilty of negligence as a matter of law.

Defendant cites many cases to support its contention that plaintiff was guilty of contributory negligence as a matter of law. We need not review those cases. We have examined all of them and find that none is authority for holding plaintiff guilty of contributory negligence as a matter of law under the facts and circumstances of this case.

Defendant contends that the trial court committed prejudicial error in overruling defendant's objections to, and motions for mistrial in connection with, this argument of plaintiff's counsel: ''Do you think these people who lived in that neighborhood, Mr. Hanna, who has lived there for years, Mr. Campbell and Mr. Reitz, they know

what is going on, and when they tell you of this awful condition that was there, and in the face of that we find Mr. Gans, he said that back in 1927, mind you, this was called to the attention of the Public Service Company, and again in 1936. How long, I ask you, how many graves must be filled, how many tomb stones erected, how many hospitals filled - - -

"BY MR. BOAS (counsel for defendant): 'I object to that and move for a mistrial on account of the prejudicial argument, and he doesn't afford me the opportunity to object, and I ask that that be stricken out, and I ask for a mistrial because of his conduct in arguing the case.'

"BY THE COURT: 'The objection will be overruled.'

"BY MR. BOAS: 'I ask the Court to instruct the jury to disregard that statement, there is nothing to justify such argument.'

"BY THE COURT: 'The request will be denied.'

"BY MR. MILLER (counsel for plaintiff): 'I simply asked the question, how long do we have to wait until it strikes in our own home, to someone near and dear that comes into the court room with an arm withered and worn, and present our case? We need, in this case, plain, stern, forward and courageous action by high minded jurors that says that justice must be done.' "

By way of background, plaintiff's testimony showed that the condition of the westbound rails and of the area between the rails, which, according to plaintiff, caused his automobile to become caught, had existed unchanged for a period of 15 years. The evidence was such that counsel could legitimately express his opinion that this condition was an "awful" condition. Plaintiff's counsel, after describing the existing condition as an "awful" one, told the jury that Mr. Gans (chief engineer, Dept. of Streets and Sewers, City of St. Louis) had said that in 1927 and again in 1936 this ("awful" condition) was called to the attention of defendant. A reference to the testimony of the witness Gans discloses that, while he was permitted to testify that certain correspondence between defendant and the city relating to the condition of Manchester covered the period between 1927 and 1937, there was no testimony by Mr. Gans from which it might be fairly inferred that the city was calling the attention of the Public Service Company to an "awful" condition, or to any particular condition, at any given place on Manchester Avenue. Nor was there any testimony from which it might be fairly inferred that the city was exhorting defendant to correct the condition of the rails and pavement of the westbound track. That no such inference might be fairly made is demonstrated by Mr. Gans' testimony on cross-examination to the effect that, at some time subsequent to this accident, the space between the eastbound rails was repaved, but that the space between the westbound rails was not but was left in its then condition, for the specific purpose of discouraging

vehicular traffic on the westbound track; and by his further testimony that this action was taken by arrangement between the city and defendant.

With this as preliminary, plaintiff's counsel then argued, "how many graves must be filled, how many tomb stones erected, how many hospitals filled ----." After objection and request for a mis-trial, he explained that he meant to ask whether "we have to wait until it strikes in our own home, to someone near and dear that comes into the court room with an arm withered and worn," and then made the further statement that what was needed was "plain, stern, forward and courageous action by high minded jurors." There was no evidence in the case that a great number of persons had been killed, many tombstones erected, or that prior injuries had occurred to the extent of filling hospitals. The evidence showed only that plaintiff's wife-passenger was killed in this accident and that plaintiff was injured. No issue was submitted to the jury which permitted the assessment of punitive damages.

We think it unmistakably clear that counsel by his argument was saying to the jury that an "awful" condition had existed for years and that defendant, despite entreaties by municipal authorities, had refused to correct it; that due to the condition and the refusal to correct it, many people had been killed and many hospitals filled with injured persons; that this jury, instead of waiting until an accident affecting someone in their own families has occurred, should, by their verdict, not only compensate plaintiff for whatever injuries he had sustained, but should also punish defendant for refusal to take action to correct the condition. We are unable to give any other meaning to the words and their implications. We are compelled to conclude that this argument of plaintiff's counsel could have had no other purpose, and could have served no other purpose, than to arouse and inflame the jury with a feeling of hostility toward the defendant, and that such feeling may have prevented defendant from receiving from the jury fair, impartial, and dispassionate considera-tion uninfluenced by improper argument.

The trial court in overruling the objection, refusing the request for a mistrial, and refusing to instruct the jury to disregard, clearly approved the statements made as legitimate and proper argument justified by the evidence in the case.

We believe this argument was more prejudicial than the arguments which we condemned ▮▮▮ in Walsh v. Terminal R. R. Ass'n., 353 Mo. 458, 467, 468, 182 S. W. 2d 607, 611, 612, and Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 805, 806, 184 S. W. 2d 454, 457, 458. It is similar in many respects to that condemned in Monroe v. C. & A. R. Co., 297 Mo. 633, 643, 644, 249 S. W. 644, 646.

Plaintiff contends that the remarks of his counsel were no more than legitimate comments upon defendant's conduct. As pointed out, we

do not so construe the statements made. Plaintiff cites Crews v. Kansas City Pub. Serv. Co., 341 Mo. 1090, 1104, 1105, 111 S. W. 2d 54, 61, 62. The only similarity in the arguments in the two cases is that the suggestion of hospitals being filled is made in both cases. However, in the Crews case, the reference to hospitals being filled was used in this context: "hospitals are filled with people because the person in charge of the instrumentality which came in collision with them says he did not see them." 111 S. W. 2d 62. We said there: "The question of liability turned upon the ability of the motorman to stop after he saw or could have seen plaintiff in imminent peril, and, while the statement about hospitals is rather exaggerated, plaintiff's counsel had the right to argue both that the motorman did see and should have seen her." 111 S. W. 2d 62. We further pointed out that the amount of the verdict was not excessive nor claimed to be excessive and stated that we did not approve of all the statements made in the argument but felt that, under the circumstances of that case, we should defer to the judgment of the trial court that the argument was not prejudicial. That case does not demonstrate the propriety of the argument in this case.

Plaintiff also cites the cases of Davis v. Wells, Mo. App., 27 S. W. 2d 714 and Evans v. Trenton, 112 Mo. 390, 20 S. W. 614, and quotes from those opinions to demonstrate the wide latitude permitted in argument. We need not here analyze the arguments in those cases. We have examined them and consider that they are not authorities to justify the argument in this case. We agree that counsel are and should be permitted wide latitude in argument and, in holding this argument prejudicially erroneous, we reiterate what was said in Dodd v. Missouri-Kansas-Texas R. Co., supra: "This is not to place counsel in a 'straight jacket' (Paul v. Dunham, Mo. App., 214 S. W. 263) nor ban 'oratorical conceit or flourish.' Bishop v. Brittain Inv. Co., 229 Mo. 699, 129 S. W. 668, 680, Ann. Cas. 1912A, 868. But the argument in the instant case cannot be classified as mere 'oratorical conceit or flourish' and it does not come within the limitations of acceptable and proper argument which we have no intention of modifying. Evans v. Town of Trenton, 112 Mo. 390, 399, 400, 20 S. W. 614, 616; Hancock v. Kansas City Terminal R. Co., 339 Mo. 1237, 100 S. W. 2d 570. * * * The trial judge is permitted some discretion in restraining argument and in passing on its effect when he rules on a motion for a new trial. Aly v. Terminal R. Assn of St. Louis, 342 Mo. 1116, 119 S. W. 2d 363. But even so when argument is improper and especially when it is inflammatory the trial court should take the proper and necessary action to insure the removal of its prejudicial effect. Rytersky v. O'Brine, 335 Mo. 22, 70 S. W. 2d 538; Carpenter v. Kurn, 345 Mo. 877, 136 S. W. 2d 997; Monroe v. Chicago & A. R. Co., supra." 184 S. W. 2d 458.

1116

Our conclusion that this case must be reversed and remanded for a new trial because of prejudicial argument by plaintiff's counsel makes it unnecessary to consider most of the other errors alleged by defendant. There is, however, one assignment of error relating to the admissibility of evidence which we shall determine because of the probability that similar evidence may be offered at another trial.

Defendant contends that the court erred in permitting plaintiff's witnesses, over objection of defendant, to testify to prior instances in which either the witnesses, or others whom they had observed, had experienced difficulty in traversing the section of Manchester occupied by defendant's westbound track at the place of the accident in question. Defendant says there was no "showing that the circumstances were in any way similar."

Four witnesses testified that they had experienced difficulty, and some of them testified that they had observed others who experienced difficulty, in traversing the part of Manchester in question, in that their wheels became caught in the depressions in which the rails of the track were located. We need not set out the testimony of these witnesses in detail. Suffice to say that careful examination of the record discloses that the incidents recounted by the witnesses occurred under substantially the same conditions and circumstances, at the same place, and that the difficulties experienced were caused by the same conditions which caused the rear wheels of plaintiff's automobile to become caught.

This testimony was some evidence that the condition of the street existing at the time of the accident was an unsafe and hazardous one. This testimony was also some evidence of notice to defendant not only of the existing condition, but also of the fact that the condition was such that drivers of automobiles driving east in the westbound track were unable to promptly drive or pull back into the eastbound traffic lane. Thus, it was evidence which the jury might properly consider in determining when the first appearance of danger arose under the vigilant watch ordinance. Consequently, it was not error for the trial court in its discretion to admit this relevant testimony. Taylor v. Kansas City, 342 Mo. 109, 117, 118, 112 S. W. 2d 562, 565, 566; Cameron v. Small, Mo. Sup., 182 S. W. 2d 565, 570; Moses v. Kansas City Public Service Co., 239 Mo. App. 361, 374, 375, 188 S. W. 2d 538, 545, 546.

The cases cited by defendant to support his contention that this testimony was not admissible either are not controlling or are not applicable to the situation in the present case. Goble v. Kansas City, 148 Mo. 470, 50 S. W. 84, was overruled by Hebenheimer v. St. Louis, 269 Mo. 92, 102, 103, 189 S. W. 1180, 1183, in which latter case it was held that the testimony of others that they had observed a coal hole cover slip and tilt when persons stepped upon it, was admissible to show the effect of stepping on the coal hole cover to indicate the

existence of a dangerous condition. Calcaterra v. Iovaldi, 123 Mo. App. 347, 100 S. W. 675, and McComb v. Vaughn, 358 Mo. 951, 218 S. W. 2d 548, involved the exclusion of evidence of prior negligent acts offered to prove negligence on the occasion in question. This is not involved in the present case. In Blackwell v. J. J. Newberry Co., Mo. App., 156 S. W. 2d 14, cited by both parties here, the specific question was the admissibility of evidence offered by defendant to show the absence of prior accidents or instances from the cause alleged to have resulted in plaintiff's injuries. The court, in the Newberry case, recognized the principle established by prior Missouri decisions that evidence of prior accidents of like character occurring under substantially the same conditions and caused by the same condition is admissible as tending to prove the dangerous character of a place or instrumentality. The court, in an attempt to determine the rationale of the rule of evidence involved, suggested that, while no inflexible rule may be stated as to the admissibility of such evidence, it should be admitted only where the party against whom it is offered is not by the nature of the evidence "deprived of an opportunity of developing, by cross-examination or otherwise, substantially all the circumstances under which such previous accidents happened or the circumstances in connection with those instances when the peril was avoided." 156 S. W. 2d 20. In our view, the consideration last stated is only one of the factors to be taken into consideration by the trial court in determining the admissibility of this type of evidence. That is to say, although this type of evidence may be relevant and have probative value, nevertheless the objections to its admissibility by reason of the consideration of other factors may outweigh the value of the proffered evidence in a given case. For example, to admit the evidence may constitute unfair surprise to an opponent, may tend to confuse the issues, or may involve the unwise consumption of time in trial; in which event or events the trial court, in its discretion, ▆▆▆ may be justified in excluding it. In the present case, although defendant's counsel was, to a certain extent at least, limited in his opportunity to develop the circumstances of the prior incidents which had been observed by the witnesses, we cannot say that the trial court abused its discretion in admitting this relevant testimony. Certainly this is true when the objections interposed went only to the materiality and relevancy of the proffered evidence.

For the error noted, judgment is reversed and the cause remanded.

PER CURIAM:—Divisional Opinion of Coil, C., is adopted as the opinion of the Court en Banc. *Ellison, C. J.,* and *Dalton, Hollingsworth* and *Hyde, JJ.,* concur; *Conkling, J.,* concurs in result in separate opinion in which *Tipton* and *Leedy, JJ.,* concur.

CONKLING, J.—I concur in the conclusion of the principal opinion that the judgment appealed from "must be reversed and remanded for a new trial because of prejudicial argument by plaintiff's counsel." Therefore I concur in the result reached.

But I respectfully dissent from that portion of the principal opinion which rules that the admissibility of the testimony of the four, witnesses referred to was discretionary with the trial court. And it is my further view that under this record and in the instant circumstances the testimony of the four witnesses respecting some difficulty experienced on other occasions in getting other automobile wheels out of some depressions on Manchester Avenue was improperly admitted.